IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| Plaintiff, | § § | |
| VS. | § § | NO. 3-09-CV-0412-B-BD |
| JPI CONSTRUCTION, L.P., ET AL. | § § § | |
| Defendants. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

This housing discrimination case is before the court on cross-motions for partial summary judgment. At issue is whether the conditions at some or all of 52 multifamily housing complexes designed, developed, or constructed by defendants in Texas and other states establish a pattern or practice of discrimination against disabled persons in violation of the Fair Housing Act ("FHA"), Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. § 3601, *et seq.*, and Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181, *et seq.* Because genuine issues of material fact preclude summary judgment for either party, both motions should be denied.

I.

Defendants JPI Construction, L.P., Multifamily Construction, L.L.C., JPI Apartment Development, L.P. d/b/a JPI Campus Quarters, Lifestyle Apartment Development Service, L.L.C., Jefferson Bend, L.P. d/b/a Jefferson at Mission Gate Apartments, Jefferson Lake Creek, L.P. d/b/a Jefferson Center Apartments, and Apartment Community Realty, L.L.C., collectively referred to as "JPI," are engaged in the business of designing and developing multifamily housing complexes

throughout the United States. (*See* Plf. MSJ App., Exh. 2 at 127 n.1, 131-41 & Exh. 3 at 148-56, 164-69, 177-81, 188-92). The JPI portfolio of properties includes condominiums, apartments, garden-style communities, and student housing. (*Id.*; *see also* Supp. Jt. Stat. Rep. [Doc. #32] at 24-25). In this lawsuit, the federal government accuses defendants of engaging in a pattern or practice of discrimination against disabled persons in violation of the accessibility requirements of the FHA and the ADA. (*See* Plf. Compl. at 7, ¶ 28 & 8, ¶ 34). More particularly, plaintiff alleges that two JPI properties in Texas,[1] and more than 200 properties in 25 other states and the District of Columbia, are not designed or constructed in a matter so that: (1) the public and common use areas are readily accessible to and usable by handicapped persons; (2) doors are sufficiently wide to allow passage by handicapped persons in wheelchairs; and (3) units within the dwellings contain features of adaptive design, including accessible routes into and through the dwellings, light switches and environmental controls in accessible locations, and usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space. (*Id.* at 5-6, ¶¶ 18-19 & 6-7, ¶¶ 23-24). In addition to civil penalties, plaintiff seeks an order requiring defendants to retrofit the subject properties to bring them into compliance with federal accessibility laws. (*Id.* at 9-10).

To effectively manage this litigation, the court entered a case management order that required the parties to conduct discovery in phases. (*See* Doc. #35). The first phase was limited to 52 properties in 18 states and the District of Columbia that were jointly selected by the parties ("Phase I Properties"). (*Id.*). Deadlines were established for designating experts, completing discovery, and filing dispositive motions relating to the Phase I Properties. (*Id.*). As contemplated by the case

---

[1] The two Texas properties are Jefferson at Mission Gate, a garden-style apartment complex in Plano, Texas, and Jefferson Center Apartments, a garden-style apartment complex in Austin, Texas. (*See* Plf. Compl at 2, ¶¶ 4-5). Plaintiff does not identify any of the other JPI properties in its complaint.

management order, plaintiff retained five accessibility experts who reviewed architectural plans, observed and measured various interior and exterior features of the properties, and inspected public use areas. Where possible, the experts physically inspected at least three units of each unit type at the subject properties, recording any observations and measurements that did not comply with federal accessibility regulations and guidelines. Written reports were prepared by each expert and filed with the court. Rebuttal experts retained by defendants also inspected the properties and filed written reports.

After the close of discovery, plaintiff notified defendants that the government would not pursue claims involving the design and construction of 20 of the Phase I Properties. Plaintiff then filed a motion for partial summary judgment as to liability with respect to the other 32 properties. In support of its motion, plaintiff points to more than 500 conditions at the properties which allegedly deviate from the FHA Accessibility Guidelines ("FHA Guidelines") and the ADA Standards for Accessible Design ("ADA Standards"). According to plaintiff, each condition violates one or more of the federal accessibility regulations and, together, constitute a pattern or practice of discrimination against persons with disabilities. Defendants oppose the motion and seek partial summary judgment with respect to any claims involving the 20 properties no longer at issue in this lawsuit and the relief requested by plaintiff. Both motions have been fully briefed by the parties and are ripe for determination.

A.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106

S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of a genuine fact issue. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). This may be done by "pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Id., quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.), *cert. denied*, 113 S.Ct. 98 (1992). By contrast, a movant who bears the burden of proof at trial must establish "beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

B.

The FHA prohibits discrimination in housing on the basis of disability. *See* 42 U.S.C. § 3604(f)(1). "Discrimination" includes the failure to design and construct covered multifamily dwellings[2] after March 13, 1991, in such a manner that:

---

[2] The term "covered multifamily dwellings," as used in the statute, means:

    (A)    buildings consisting of 4 or more units if such buildings have one or more elevators; and

    (B)    ground floor units in other buildings consisting of 4 or more units.

42 U.S.C. § 3604(f)(7).

>    (i)   the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
>
>    (ii)  all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
>
>    (iii) all premises within such dwellings contain the following features of adaptive design:
>
>  >    (I)   an accessible route into and through the dwelling;
>  >
>  >    (II)  light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;
>  >
>  >    (III) reinforcements in bathroom walls to allow later installation of grab bars; and
>  >
>  >    (IV)  usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

*Id.* § 3604(f)(3)(C). Compliance with the appropriate requirements of the American National Standard for buildings and facilities providing accessibility and usability for physically handicapped people, ANSI A117.1, satisfies the design and construction requirements of paragraph (3)(C)(iii). *See id.* § 3604(f)(4). Likewise, compliance with state or local laws that incorporate the accessibility requirements of paragraph (3)(C) satisfies the requirements of that paragraph. *See id.* § 3604(f)(5)(A).

The FHA authorizes the Secretary of Housing and Urban Development ("HUD") to provide technical assistance to those seeking to implement the accessibility requirements of the Act. *See id.*, § 3604(f)(5)(C). Pursuant to that authority, HUD has issued guidelines to assist builders and developers in complying with the FHA. *See* 24 C.F.R. Ch. I, Subch. A, App. II. However, the FHA

Guidelines are not mandatory. *See Barker v. Niles Bolton Assoc., Inc.*, 316 Fed.Appx. 933, 941-42, 2009 WL 500719 at *7 (11th Cir. Mar. 2, 2009), *citing* 24 C.F.R. Ch. I, Subch. A, App. III. Nor do they establish performance standards or minimum requirements. *Id.* Rather, the guidelines constitute only one of several safe harbors for compliance with the FHA. *Id.*; *see also* 24 C.F.R. § 100.205(e)(2)(i).

1.

Relying exclusively on the written reports of their retained experts,[3] plaintiffs point to more than 500 accessibility barriers at 32 JPI properties which allegedly deviate from specifications in the FHA Guidelines and/or the ANSI standards. (*See* Plf. MSJ App., Exh. 1 at 1-125). In particular:

- At 24 properties, continuous accessible pedestrian routes are not provided to some dwelling units and public and common use areas, or require the user to travel in the vehicular drive;

- At 27 properties, required accessible routes have running slopes and/or cross-slopes that exceed the 5% slope and 2% cross-slope limits set forth in the Guidelines;

- At 21 properties, required accessible routes have curb ramps with slopes and cross-slopes that exceed the 8.33% and 2% limits set forth in the Guidelines;

- At 23 properties, required accessible routes have steps, curbs, or abrupt level changes exceeding the 1/4-inch or 1/2-inch beveled limit set forth in the Guidelines;

---

[3] The summary judgment record does not include property-specific reports prepared by experts for either party. Instead, the experts filed their reports with the court as they completed rolling inspections of the properties during Phase I discovery. (*See* Plf. Exp. Reports, Docs. #45, 47, 50, 53, 55, 57, 60, 62, 64, 66, 70, 74, 90, 106, 108, 113, 119, 131, 156, 163, 169, 173, 179, 183, 185, 187, 193, 195, 202; Def. Exp. Reports, Docs. #78, 79, 86, 92, 93, 96, 101, 102, 110, 112, 115, 116, 117, 127, 137, 149, 151, 152, 154, 159, 162, 178, 191, 192, 199, 206, 207, 208, 213, 215, 218, 220). For summary judgment purposes, both plaintiff and defendants rely on summaries of the reports prepared by their experts. (*See* Plf. MSJ App., Exh. 1 at 1-125; Def. MSJ Resp. App., Exh. 1 at 1-85.1).

- At eight properties, thresholds at doorways in the public and common use areas have an abrupt level change higher than the 1/2-inch beveled limit set forth in the Guidelines;

- At seven properties, maneuvering clearance at doors to the public and common use areas is sloped at least 4%, which is greater than the Guideline requirement for level maneuvering clearance at doors;

- At 13 properties, pull-side maneuvering clearance at doors and gates in the public and common use areas is less than the 18-inch minimum set forth in the Guidelines;

- At 22 properties, doors or gates in public and common use areas have no reachable hardware or have hardware that requires tight grasping, tight pinching, or twisting of the wrists to operate;

- At 13 properties, the unprotected underside of stairways protrude into the path of travel, and no cane-detectible barriers are provided to allow visually impaired persons to safely navigate the route;

- At 17 properties, accessible parking is not provided or is noncompliant because there is no access aisle, the access aisle has running slopes at 10% or greater or cross-slopes at 6% or greater, or the access aisle is less than the 60-inch minimum specified in the Guidelines;

- At nine properties, the common use garages have an interior width less than the 14-foot, 2-inch requirement specified in the Guidelines;

- At 11 properties, interior dwelling unit doors designed for user passage have clear widths of less than 32 inches as specified in the Guidelines;

- At seven properties, thermostats are higher than 48 inches above the floor as specified in the Guidelines;

- At nine properties, the clearance between counters and all opposing base cabinets, countertops, appliances, or walls is less than the 40-inch minimum specified in the Guidelines;

- At five properties, the turning radius provided in U-shaped kitchens is less than the 60-inch minimum specified in the Guidelines; and

- At five properties, clear floor space is not provided in the bathroom to allow a wheelchair user to enter and close the door.

(*Id.*; *see also* Plf. MSJ Br. at 25-35). According to plaintiff, the pervasiveness of these conditions at the 32 JPI properties constitutes a pattern or practice of discrimination against persons with disabilities.

Defendants counter with reports from experts who inspected the same properties and found them to be generally accessible and usable by handicapped persons. One defense expert, Paul Sheriff, is a consultant who provides accessibility-related services to individuals with disabilities, architectural firms, and property owners. (Def. MSJ Resp. App., Exh. 32 at 597, 602). Using a custom-built wheelchair specially designed for evaluating accessibility, Sheriff, who is a paraplegic, conducted "roll-thru" surveys at 12 of the 32 JPI properties. (*See id.*, Exh. 32 at 599, 607-08, 612; Docs. #102, 110, 117, 137, 149, 152, 154, 208, 213, 215, 218, 220). According to Sheriff, the properties he surveyed have "very good overall and general accessibility, usability, and adaptability[,]" notwithstanding a few "punch-list type" items that negatively impact accessibility. (Def. MSJ Resp. App., Exh. 32 at 617). Thus, Sheriff concluded that the properties were designed and constructed in compliance with the FHA. (*See id.*, Exh. 32 at 617-18). A similar conclusion was reached by Alison Vredenburgh, another expert who conducted "roll thru" surveys at five JPI properties. (*See id.*, Exh. 30 at 572; Docs. #78, 92, 206, 207).[4]

---

[4] Plaintiff objects to the methodology used by Sheriff and Vredenburgh as "inherently subjective and specific to his physical characteristics and abilities." (*See* Plf. MSJ Br. at 42). However, at least one court has relied on similar testimony in ruling on a motion for summary judgment in an FHA civil enforcement case. *See United States v. Pacific*

Two other defense experts conducted property surveys similar to those conducted by plaintiff's experts. Between them, Mark Wales and Peter Skarzenski surveyed all but one of the remaining Phase I Properties and concluded that the properties complied with the requirements of federal law and were accessible to and usable by persons with disabilities. (*See* Def. MSJ Resp. App., Exh. 28 at 543 & Exh. 41 at 811; Docs. #79, 86, 93, 96, 101, 112, 115, 116, 127, 151, 159, 162, 178, 191, 192, 199). In one of his reports, Wales refuted the methodology and conclusions of plaintiff's experts. (*See* Def. MSJ Resp. App., Exh. 28 at 485-501, 501-42). Among other things, Wales criticized the finding that several of the JPI properties lack continuous accessible pedestrian routes between some dwelling units and public use areas, explained that the routes identified by plaintiff were not intended to be the "accessible" routes, and described alternative routes that meet FHA criteria. (*See, e.g. id.*, Exh. 28 at 504-05). Wales also challenged the accuracy of slope measurements taken by plaintiff's experts and demonstrated through measurements taken from more than one point on the same sidewalk how the slope meets the FHA Guidelines. (*See id.*, Exh. 28 at 492-94).

2.

In order to obtain summary judgment on its FHA claim, plaintiff must prove "beyond peradventure" that defendants participated in a pattern or practice of discrimination. *See* 42 U.S.C. § 3614(a).[5] A "pattern or practice of discrimination" is established when the evidence shows that

---

*Northwest Electrical Co.*, No. CV-01-019-S-BLW, 2003 WL 24573548 at *13 (D. Idaho Mar. 21, 2003). Moreover, *Daubert*-type objections, including objections to the methodology used by an expert, are generally not considered at the summary judgment stage. *See Nielsen v. Alcon, Inc.*, No. 3-08-CV-2239-B-BD, 2011 WL 4529762 at *5 (N.D. Tex. Sept. 2, 2011), *rec. adopted*, 2011 WL 4529674 (N.D. Tex. Sept. 30, 2011).

[5] The FHA also authorizes the government to bring a civil enforcement action if "any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance." *See* 42 U.S.C. § 3614(a). Although plaintiff generally alleges in its complaint that the failure of defendants to design and construct multifamily dwellings in accordance with FHA Guidelines jeopardizes an important public interest, (*see* Plf. Compl. at 7, ¶ 28), the summary judgment briefing focuses almost exclusively on the pattern and practice claim.

"discrimination was the company's standard operating procedure[,] the regular rather than the unusual practice." *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977). Although isolated, accidental, or sporadic misconduct does not rise to the level of a pattern or practice of discrimination, *see id.*, 97 S.Ct. at 1855, there is no threshold number of incidents that must occur before the government can bring suit against a party. *United States v. Habersham Properties, Inc.*, 319 F.Supp.2d 1366, 1373 (N.D. Ga. 2003), *citing United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 123-24 (5th Cir. 1973). Each case must be evaluated on an individual basis and "turn on its own facts." *Id.* The determination of whether evidence indicates a pattern or practice of discrimination is ordinarily a question of fact for the jury. *Id.*; *see also United States v. Garden Homes Management Corp.*, 156 F.Supp.2d 413, 420 (D.N.J. 2001).

Judged against these standards, the court has little difficulty concluding that plaintiff is not entitled to summary judgment on its FHA pattern or practice claim. Even if all the conditions identified by plaintiff deviate from the specifications in the FHA Guidelines, the guidelines are neither mandatory nor prescribe specific requirements which, if not met, would constitute unlawful discrimination. *See Barker*, 2009 WL 500719 at *7, *citing* 24 C.F.R. Ch. I, Subch. A, App. III (1991). There are other ways to achieve compliance with the accessibility requirements of the FHA. *See* 56 Fed.Reg. 9472, 9478 (Mar. 6, 1991).[6] Moreover, defendants have adduced expert testimony

---

[6] When the FHA Guidelines were published in the Federal Register, a number of commenters asked HUD to categorize the Guidelines as minimum requirements, rather than as performance standards. The agency responded:

> The Guidelines adopted by the Department provide one way in which a builder or developer may achieve compliance with the Act's accessibility requirements. There are other ways to achieve compliance with the Act's accessibility requirements. . . Given this fact, it would be inappropriate on the part of the Department to constrain designers by presenting the Fair Housing Accessibility Guidelines as minimum

-10-

that all 32 JPI properties are accessible to and usable by persons with disabilities. It is particularly within the jury's ken to examine the more than 500 accessibility barriers alleged by plaintiff and determine whether such evidence constitutes a pattern or practice of discrimination. *See, e.g. Fair Housing Council v. Village of Olde St. Andrews, Inc.*, 250 F.Supp.2d 706, 720 (W.D. Ky. 2003) (denying motion for summary judgment in FHA disability discrimination case where only uncontested evidence was that properties failed to meet requirements of FHA Guidelines); *United States v. Hallmark Homes, Inc.*, No. CV-01-432-N-EJL, 2003 WL 23219807 at *8 (D. Idaho Sept. 29, 2003) (government not entitled to summary judgment with respect to liability under FHA where defendants offered some evidence to dispute alleged violations); *United States v. Pacific Northwest Electrical Co.*, No. CV-01-019-S-BLW, 2003 WL 24573548 at *13 (D. Idaho Mar. 21, 2003) (same).[7]

C.

The ADA prohibits discrimination against persons with disabilities by "place[s] of public accommodation" operated by private entities. *See* 42 U.S.C. § 12182(a). "Discrimination" includes a failure to design and construct such places of public accommodation after January 25, 1993, that

---

> requirements. Builders and developers should be free to use any reasonable design
> that obtains a result consistent with the Act's requirements[.]

56 Fed. Reg. at 9478.

[7] A number of courts outside the Fifth Circuit have held that summary judgment on the issue of liability in a design and construction case is appropriate where the plaintiff demonstrates that a covered dwelling does not comply with the FHA Guidelines or the ANSI standards, and defendants fail to submit evidence that the property complies with any other accessibility standard. *See, e.g. United States v. Tanski*, No. 1-04-CV-714, 2007 WL 1017020 at *11 (N.D.N.Y. Mar. 30, 2007); *United States v. Taigen & Sons, Inc.*, 303 F.Supp.2d 1129, 1154 (D. Idaho 2003); *United States v. Quality Built Constr., Inc.*, 309 F.Supp.2d 756, 763 (E.D.N.C. 2003). Even if this court adopts that burden-shifting framework, summary judgment is not proper because defendants have adduced at least some evidence that the allegedly defective conditions identified by plaintiff comply with federal accessibility regulations and, thus, do not violate the FHA at all.

are "readily accessible to and usable by" persons with disabilities. *Id.* § 12183(a)(1). Although residential apartment buildings are not generally subject to the ADA, leasing offices within such complexes have been held to constitute "places of public accommodation" for purposes of the statute. *See No Barriers, Inc. v. BRH Texas GP, L.L.C.*, No. 3-01-CV-344-R, 2001 WL 896924 at *2 (N.D. Tex. Aug. 2, 2001).

According to plaintiff, 33 of the conditions that allegedly violate the FHA Guidelines also violate the ADA Standards -- regulations promulgated by the DOJ that establish minimum technical requirements for compliance with the ADA. (*See* Plf. MSJ App., Exh. 1 at 3-125). In addition to those conditions, plaintiff has adduced some evidence that the leasing offices at six JPI properties lack accessible parking. (*See id.*, Exh. 1 at 98-99). However, Mark Wales, one of the experts retained by defendants, claims that plaintiff's experts misinterpreted the ADA Standards with respect to parking spaces, signage, slope criteria, and accessible routes. (*See* Def. MSJ Resp. App., Exh. 28 at 501-03). As with plaintiff's FHA claim, these competing expert reports raise genuine issues of material fact concerning violations of the ADA Standards.

D.

Defendants seek summary judgment with respect to any claims involving the 20 properties no longer at issue in this lawsuit and the relief requested by plaintiff. That plaintiff did not rely on the 20 properties in moving for summary judgment does not necessarily mean that there are no genuine issues of material fact concerning those properties. To the contrary, as previously discussed, the determination of whether evidence indicates a pattern or practice of discrimination is ordinarily a question of fact for the jury. *See Habersham Properties*, 319 F.Supp.2d at 1373; *Garden Homes Management*, 156 F.Supp.2d at 420. Nor will the court consider any arguments related to remedies

and damages at this stage of the proceeding. Where, as here, there is a genuine dispute as to the threshold issue of liability, such issues are best left for trial or beyond. *See Nielsen v. Alcon, Inc.*, No. 3-08-CV-2239-B-BD, 2011 WL 4529762 at *13 (N.D. Tex. Sep. 2, 2011), *rec. adopted*, 2011 WL 4529674 (N.D. Tex. Sep. 30, 2011). Therefore, the court should deny summary judgment on all remaining issues and claims.

## RECOMMENDATION

Plaintiff's motion for partial summary judgment [Doc. #235] and defendants' cross-motion for partial summary judgment [Doc. #237] should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 10, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE