UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JPI CONSTRUCTION, L.P.; MULTIFAMILY | ) |
| CONSTRUCTION, L.L.C.; JPI APARTMENT | ) Civil Action No. 3:09-cv-412-B |
| DEVELOPMENT, L.P. D/B/A JPI CAMPUS | ) |
| QUARTERS; LIFESTYLE APARTMENT | ) |
| DEVELOPMENT SERVICE, L.L.C.; JEFFERSON | ) |
| BEND, L.P. D/B/A JEFFERSON AT MISSION GATE | ) |
| APARTMENTS; JEFFERSON LAKE CREEK, L.P. | ) |
| D/B/A JEFFERSON CENTER APARTMENTS; and | ) |
| APARTMENT COMMUNITY REALTY, L.L.C., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**UNITED STATES' OBJECTIONS TO THE MAGISTRATE'S
REPORT AND RECOMMENDATION TO DENY THE UNITED STATES' MOTION
FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

**TABLE OF CONTENTS**

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  Specific Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1.  The Court erred by failing to recognize that compliance with
            the design and construction provisions of the FHA requires adherence
            to a recognized, comparable, objective standard of accessibility. . . . . . 2

        2.  The Court disregarded the appropriate legal framework for assessing
            accessibility and failed to recognize the weight of the case law
            adopting the burden-shifting standard. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

i

3. The Court erred by failing to recognize that JPI's experts have not presented evidence of compliance with an alternative recognized, comparable, objective standard that raises a question of material fact under Rule 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4. The Court erred by failing to address the United States' second basis for liability, denial of rights to a group of persons where such denial raises an issue of general public importance. . . . . . . . . . . . . . . . . . . . . . 14

5. The Court erred by failing to recognize that the proper interpretation of the ADA Standards is a question of law, not fact, and the United States is entitled to summary judgment on those claims. . . . . . . . . . . . 16

6. The Court erred by deferring questions of law to the jury. . . . . . . . . . . 18

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

**Cases:**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Alcan Aluminum Corp. v. BASF Corp.*, 133 F. Supp. 2d 482 (N.D. Tex. 2001). . . . . . . . . . . . . 13

*Auer v. Robbins*, 519 U.S. 452 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Baltimore Neighborhoods, Inc. v. Rommel Builders*, 40 F. Supp. 2d 700 (D. Md. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Baltimore Neighborhoods, Inc. v. Sterling Homes Corp.*, No. 96-915, 1999 WL 1068458 (D. Md. Mar. 25, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Barker v. Niles Bolton Assoc., Inc.*, 316 F. App'x 933 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . 5

*Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). . . . . . . . . . . . . . 4

*Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc. (Olde St. Andrews I)*, 250 F. Supp. 2d 706 (W.D. Ky. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 19

*Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc. (Olde St. Andrews II)*, No. 3:98-CV-630, slip op. (W.D. Ky. June 18, 2003), aff'd, 210 F. App'x 469 (6th Cir. 2006). . 8, 12

*Long Island Care At Home, Ltd. v. Coke*, 551 U.S. 158 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Meyer v. Holley*, 537 U.S. 280 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Mont. Fair Hous. v. Am. Capital Dev.*, 81 F. Supp. 2d 1057 (D. Mont. 1999). . . . . . . . . . . . . . 7

*Nielsen v. Alcon, Inc.*, No. 3–08–CV–2239–B–BD, 2011 WL 4529762 (N.D. Tex. Sept. 2, 2011). ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Savannah-Chatham Cnty. Fair Hous. Council v. Genesis Designer Homes, LLC*, No. CV406-096 (S.D. Ga. Jan. 18, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Bob Lawrence Realty*, 474 F.2d 115 (5th Cir. 1973). . . . . . . . . . . . . . . . . . . . 15

*United States v. Edward Rose & Sons*, 246 F. Supp. 2d 744 (E.D. Mich. 2003), aff'd, 384 F.3d 258 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Hallmark Homes, Inc.*, No. CV01-432, 2003 WL 23219807 (D. Idaho Sept. 29, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16, 19

*United States v. Mead Corp.*, 533 U.S. 218 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Pac. Nw. Elec., Inc.*, No. CV-01-019-S-BLW, 2003 WL 24573548 (D. Idaho Mar. 21, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 16, 19

*United States v. Quality Built Constr. (Quality Built I)*, 309 F. Supp. 2d 756 (E.D.N.C. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19

*United States v. Quality Built Constr. (Quality Built II)*, 309 F. Supp. 2d 767 (E.D.N.C. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Richard & Milton Grant Co.*, No. 2:01-cv-2069 (W.D. Tenn. Apr. 27, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Shanrie Co. (Shanrie I)*, No. 05-CV-306-DRH, 2007 WL 980418 (S.D. Ill. Mar. 30, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States v. Shanrie Co. (Shanrie II)*, 669 F. Supp. 2d 932 (S.D. Ill. 2009). . . . . . . . . . . . 16

*United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129 (D. Idaho 2003). . . . . . . . 6, 9, 16, 19

*United States v. Tanski*, No.1:04-CV-714, 2007 WL 1017020
(N.D.N.Y. Mar. 30, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 12, 19

**Statutes and Regulations:**

28 U.S.C. § 636(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §§ 3601–19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 3601 note, Pub. L. No. 100-430, § 13(b) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. § 3604(f)(3)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

42 U.S.C. § 3604(f)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. § 3614(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

42 U.S.C. § 3614a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. §§ 12181–89 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

42 U.S.C. § 12188(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

24 C.F.R. §§ 100.200–205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

24 C.F.R. § 100.201 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

24 C.F.R. § 100.205(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Administrative Materials:**

*HUD v. Nelson*, No. 05-068FH, 2006 WL 4540542, at *5 (Sep. 21, 2006),
*aff'd*, 320 F. App'x 635 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

Final Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472–9515 (Mar. 6, 1991). . . . . . 2, 3

Fair Housing: Accessibility Guidelines; Questions and Answers;
Supplement to Notice, 59 Fed. Reg. 33362 (Jun. 28, 1994). . . . . . . . . . . . . . . . . . . . . . . . 17

Final Report of HUD Review of Model Building Codes, 65 Fed. Reg. 15740,
15756–57 (Mar. 23, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Design and Construction Requirements; Compliance With ANSI A117.1 Standards; Final Rule,
73 Fed. Reg. 63610 (Oct. 24, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 13

**Federal Rules:**

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 72(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Local Rule 72.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Other Authorities:**

H.R. Rep. No. 711, 100th Cong., 2d Sess. (1988), *as reprinted in* 1988
U.S.C.C.A.N. 2173–2230. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## I.   INTRODUCTION

On March 4, 2009, the United States filed this action alleging that the JPI Defendants (hereinafter "JPI") engaged in a pattern or practice of discrimination or denied rights to a group of persons because of disability in violation of the Fair Housing Act, 42 U.S.C. §§ 3601–19 ("FHA"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12181–89 ("ADA"). Specifically, the complaint alleged that multi-family housing complexes built by JPI over the last two decades were designed and constructed with extensive and significant accessibility barriers.

On November 11, 2011, the Court issued Findings and Recommendation (Dkt. 243) to deny both the United States' and JPI's motions for summary judgment. Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(a), the United States hereby files its objections to certain portions of the Findings and Recommendation. The Court erred by (1) not giving appropriate deference to the agency's interpretation that the FHA requires use of a recognized, objective standard, (2) disregarding the appropriate legal framework for deciding whether a property is accessible under the FHA, (3) failing to recognize that JPI's experts do not present sufficient evidence of compliance with a recognized, objective standard, (4) not addressing the United States' second basis for liability, denial of rights to a group of persons, (5) failing to recognize that the proper interpretation of the ADA is a question of law, and (6) deferring questions of law to the jury. Applying the law to the undisputed facts, the Court should conclude as a matter of law that the more than 500 violations found across 32 properties constitute a pattern or practice of discrimination or a denial of rights to a group of persons in violation of the FHA and ADA. Therefore, summary judgment for the United States as to liability is warranted. The United States respectfully objects to and asks the Court to reject the Findings and Recommendation as detailed

below and order JPI to submit both a detailed remedial plan to address demonstrated violations

and a plan for surveying the other properties in JPI's portfolio.

## II. ARGUMENT

### A. Standard of Review

Federal Rule of Civil Procedure 72(b)(3) provides that "the district judge must determine

de novo any part of the magistrate judge's disposition that has been properly objected to."

### B. Specific Objections

**1. The Court erred by failing to recognize that compliance with the design and construction provisions of the FHA requires adherence to a recognized, comparable, objective standard of accessibility.**

The United States' experts surveyed each property for compliance with the design and

construction provisions of the FHA, 42 U.S.C. § 3604(f)(3)(C), by reviewing the architectural

plans, observing and taking measurements of existing features at the property, and comparing

those observations and measurements to the FHA regulations, 24 C.F.R. §§ 100.200–205, and

the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472–9515 ("Guidelines"). *See* U.S.

MSJ at 4 (Dkt. 236). Those features found to be in violation of the HUD regulations and

Guidelines constitute a *prima facie* case of violation of the FHA. *Id*. at 11–19. In response, the

Court made the following findings:

> Even if all the conditions identified by the Plaintiff deviate from the specifications in the FHA Guidelines, the guidelines are neither mandatory nor prescribe specific requirements, which if not met, would constitute unlawful discrimination. There are other ways to achieve compliance with the accessibility requirements of the FHA.

Findings & Rec. at 10.

The Court's finding ignores the specific guidance provided by the United States

Department of Housing and Urban Development ("HUD"), the agency responsible for

rulemaking for the FHA. 42 U.S.C. § 3614a; *see also* 42 U.S.C. § 3601 note, Pub. L. No. 100-430, § 13(b) (requiring HUD to issue rules to implement the FHA amendments no later than 180 days after enactment). The United States has not argued that the Guidelines are mandatory. *See* U.S. MSJ at 11–19. However, HUD has made clear that the "other ways to achieve compliance with the accessibility requirements of the FHA" must be a "recognized, comparable, objective measure of accessibility." Design and Construction Requirements, Compliance With ANSI A117.1 Standards, Final Rule, 73 Fed. Reg. 63610, 63614 (Oct. 24, 2008); *see* U.S. MSJ at 16.

HUD has recognized nine other accessibility standards as comparable measures of accessibility and ruled that they may be used as safe harbors for demonstrating compliance with the FHA's accessibility requirements. 24 C.F.R. § 100.205(e); 73 Fed. Reg. at 63610–16; *see* U.S. MSJ at 15–16. HUD has made clear that designers and builders who do not fully comply with a safe harbor bear the burden of demonstrating that a property provides at least the minimum level of accessibility required by the FHA, as set forth in the Guidelines. The need to demonstrate compliance using an objective, comparable standard has been HUD's consistent policy since the issuance of the implementing regulations in 1989, as evidenced by HUD's reference to compliance using "ANSI A117.1–1986 *or a comparable standard*" in the regulations. 24 C.F.R. § 100.201 (1989) (emphasis added); *see also* Guidelines, 56 Fed. Reg. at 9479 ("builders and developers may follow alternative *standards* that achieve compliance with the Act's accessibility requirements") (emphasis added). HUD's interpretation is reasonable, given the specific inclusion of ANSI A117.1 in the statute. 42 U.S.C. § 3604(f)(4). Although Congress did not intend for the ANSI standard to be the only means of compliance, it recognized the value of accessibility standards. *See* H.R. Rep. No. 711, 100th Cong., 2d Sess., at 27 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 2173 ("there may be other local or state *standards* with which

3

compliance is required or there may be other creative methods of meeting these *standards*")
(emphasis added); *see* U.S. MSJ at 17–18.

HUD's interpretation of the FHA, contained in its regulations and in the Guidelines, is
entitled to great deference. It is well settled that, when an agency exercises the authority
delegated to it to issue regulations with the force of law, the agency's interpretations of the
statute that confers such authority are entitled to substantial deference. *See United States v. Mead
Corp.*, 533 U.S. 218, 226–27 (2001); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837, 842–45 (1984). Under *Chevron*, courts "ordinarily defer to an administering
agency's reasonable interpretation of a statute." *Meyer v. Holley*, 537 U.S. 280, 287 (2003)
(deferring to HUD's interpretation of the FHA). Therefore, "if the statute is silent or ambiguous
with respect to the specific issue, the question for the court is whether the agency's answer is
based on a permissible construction of the statute, . . . [and courts] have long recognized that
considerable weight should be accorded to an executive department's construction of a statutory
scheme it is entrusted to administer." *Chevron*, 467 U.S. at 843–44.

HUD's regulations, including the Guidelines, are entitled to *Chevron* deference because
(1) Congress expressly delegated to HUD the authority to issue regulations and technical
guidance; (2) the regulations, including the Guidelines, set forth requirements that have the force
of law; and (3) to the extent any ambiguity exists in the statutory requirements, the regulations
and the Guidelines reasonably interpret those requirements. *See Mead*, 533 U.S. at 226–27.[1]

---

[1] Alternatively, HUD's Guidelines are entitled to an even greater level of deference than *Chevron* deference, as they interpret the 1989 HUD regulations that implemented the FHA. *See Long Island Care At Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007) ("agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulations being interpreted") (internal quotation marks omitted); *Auer v. Robbins*, 519 U.S. 452, 461–63 (1997); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) (similar); Final Report of HUD Review of Model Building Codes, 65 Fed. Reg. 15740, 15763 (Mar. 23, 2000) ("The Guidelines set forth specifications to implement the requirements of 24 C.F.R. § 100.205(a) that all covered multi-family dwellings shall be designed and constructed to have at least one building entrance on an accessible route, unless it is impractical to do so because of terrain or unusual characteristics of the

4

Thus, courts have concluded that they should defer to the Guidelines' interpretation of the FHA. *See United States v. Shanrie Co. (Shanrie I)*, No. 05-CV-306-DRH, 2007 WL 980418, at *5 (S.D. Ill. Mar. 30, 2007) (holding that HUD's interpretation of the FHA in the Guidelines is entitled to *Chevron* deference); *United States v. Edward Rose & Sons*, 246 F. Supp. 2d 744, 751–53 (E.D. Mich. 2003) (giving deference to HUD's interpretation of the Act's design and construction requirements as set forth in the proposed regulations and the Guidelines), *aff'd*, 384 F.3d 258 (6th Cir. 2004) (giving deference to HUD regulations).[2]

HUD's consistent interpretation that compliance with the design and construction provisions of the FHA requires adherence to an objective standard is entitled to *Chevron* deference. The Guidelines, although not mandatory, are a recognized, comparable, objective measure of accessibility, and the United States' experts appropriately used the Guidelines to evaluate the properties. If a developer chooses not to rely on the Guidelines or one of the nine other standards recognized by HUD, it must demonstrate that its alternative is a recognized, comparable, objective measure of accessibility.

**2. The Court disregarded the appropriate legal framework for assessing accessibility and failed to recognize the weight of the case law adopting the burden-shifting standard.**

In its motion, the United States set forth a specific legal framework for determining whether a property complies with the design and construction provisions of the FHA, 42 U.S.C. § 3604(f)(3)(C). *See* U.S. MSJ at 11–21. The United States has shown that JPI's properties do not comply with the Guidelines. *Id.* at 22–35. Therefore, it has established a *prima facie* case of

---

site."); 65 Fed. Reg. at 15766 (the Guidelines "set[] forth technical criteria [for kitchens and bathrooms] to meet" the requirements of the FHA and the regulations); 65 Fed. Reg. at 15770 ("The Guidelines specify seven requirements relating to accessibility which reflect the language of the [Fair Housing] Act and the regulations.").
[2] In the case relied on by the Court, *Barker v. Niles Bolton Assoc., Inc.*, 316 F. App'x 933 (11th Cir. 2009), the court did not address the issue of deference to the Guidelines because the argument had not been raised in the district court. *Id.* at 941.

violation of the FHA, and JPI must show that the properties otherwise comply with a recognized, comparable, objective measure of accessibility.

Numerous courts have adopted this burden-shifting framework for determining whether a property meets the design and construction provisions of the FHA. *See Savannah-Chatham Cnty. Fair Hous. Council v. Genesis Designer Homes, LLC*, No. CV406-096, slip op. at 9 (S.D. Ga. Jan. 18, 2011) (attached as Ex. 14, App. 734–83 of U.S. MSJ) ("When Plaintiffs allege that design and construction does not meet established guidelines adopted or otherwise approved by HUD, the entry of summary judgment is appropriate unless Defendants submit evidence that the property complies with any other accessibility standard." (citations omitted)); *Shanrie I*, 2007 WL 980418, at *3 n.3 ("[I]f defendants do not comply with the specifications within the Guidelines, they still bear the burden of proving that they nonetheless have not violated the Act."); *United States v. Tanski*, No.1:04-CV-714, 2007 WL 1017020, at *11 (N.D.N.Y. Mar. 30, 2007) ("Courts have held that summary judgment on the issue of design-and-construction discrimination is appropriate where plaintiff demonstrates that a covered dwelling does not comply with the ANSI standards or the HUD Guidelines, and defendants fail to submit evidence that the property complies with any other accessibility standard."); *United States v. Richard & Milton Grant Co.*, No. 2:01-cv-2069, slip op. at 8 (W.D. Tenn. Apr. 27, 2004) (attached as Ex. 15, App. 784–810 of U.S. MSJ) ("If a construction feature does not comply with the Guidelines, then the housing provider defending an FHA violation has the burden of showing that the feature is nonetheless accessible." (citation omitted)); *United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129, 1154 (D. Idaho 2003) (finding liability where the property did not comply with the

Guidelines or ANSI, and Defendants failed to submit evidence that the property "compli[ed] with any other accessibility standard"). [3]

HUD has also adopted this framework as the appropriate enforcement standard for design and construction cases:

> In enforcing the design and construction requirements of the Fair Housing Act, a prima facie case may be established by proving a violation of HUD's Fair Housing Accessibility Guidelines. This prima facie case may be rebutted by demonstrating compliance with a *recognized, comparable, objective* measure of accessibility. . . . In making a determination as to whether the design and construction requirements of the Fair Housing Act have been violated, HUD uses the Fair Housing Act, the regulations, and the Guidelines, all of which reference the technical standards found in ANSI A117.1-1986.

73 Fed. Reg. at 63614 (emphasis added). In 2006, the HUD Secretary overruled a HUD administrative law judge's finding that, because the Guidelines were not mandatory, they could not be used to prove a violation of the design and construction provisions of the FHA. *HUD v. Nelson*, No. 05-068FH, 2006 WL 4540542, at * 5 (Sep. 21, 2006), *aff'd*, 320 F. App'x 635 (9th Cir. 2009). The HUD Secretary found that the charging party had proven that the respondent had violated the FHA where the charging party provided uncontested evidence of violations of the Guidelines and respondents had failed to show that their property met a "comparable objective accessibility standard." *Id.* at *6–8.

The Court provided no reasoning for rejecting the weight of case law adopting this legal standard, instead relying heavily on three cases that declined to grant summary judgment on the

---

[3] *See also United States v. Quality Built Constr. (Quality Built I)*, 309 F. Supp. 2d 756, 763 (E.D.N.C. 2003) (granting summary judgment to the United States because "Plaintiff has provided evidence, including measurements and photographs, showing violations of [the Guidelines]. In response, Defendants … have not come forward with alternative measurements or any other evidence to show that a triable issue of fact exists."); *Mont. Fair Hous. v. Am. Capital Dev.*, 81 F. Supp. 2d 1057, 1064–69 (D. Mont. 1999) (summary judgment granted where Plaintiff put forth evidence of noncompliance with the FHA and Defendants' two arguments in response were that the requirements of the FHA are ambiguous and that the cited conditions complied with plausible interpretations of the FHA's requirements.); *Baltimore Neighborhoods, Inc. v. Rommel Builders*, 40 F. Supp. 2d 700, 713 (D. Md. 1999) (liability found based on undisputed evidence of FHA violations); *Baltimore Neighborhoods, Inc. v. Sterling Homes Corp.*, No. 96-915, 1999 WL 1068458, at *8 (D. Md. Mar. 25, 1999) (finding liability based on undisputed observations by plaintiffs' expert and the HUD Guidelines).

pattern or practice claim: *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc. (Olde St. Andrews I)*, 250 F. Supp. 2d 706 (W.D. Ky. 2003); *United States v. Hallmark Homes, Inc.*, No. CV01-432, 2003 WL 23219807 (D. Idaho Sept. 29, 2003); *United States v. Pac. Nw. Elec., Inc.*, No. CV-01-019-S-BLW, 2003 WL 24573548 (D. Idaho Mar. 21, 2003). *See* Findings & Rec. at 11. Although the court in *Olde St. Andrews I* gave deference to "HUD's official interpretation of the FHAA in its Guidelines," it erroneously concluded that a trial was necessary to resolve the accessibility issues. 250 F. Supp. 2d at 717 n.9, 720. Indeed, following a bench trial, *see id.* at 708 n.2, the court found the Guidelines to be "highly significant" and focused almost exclusively on the noncompliance of the constructed features with the Guidelines. *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc. (Olde St. Andrews II)*, No. 3:98-CV-630, slip op. at 8, 9–18 (W.D. Ky. June 18, 2003) (attached as Ex. 16, App. 811–31 of U.S. MSJ), aff'd, 210 F. App'x 469 (6th Cir. 2006). The court stated that "once Plaintiffs have shown that a construction feature does not meet the Guidelines, Defendants undoubtedly face a heavy burden of demonstrating accessibility." *Id.* at 8.

The *Pacific Northwest* court did not consider the United States' pattern or practice claim at summary judgment because this claim was not argued in the memorandum in support of summary judgment. This was a procedural finding, not a substantive determination. *See Pac. Nw. Elec., Inc.*, 2003 WL 24573548 at *10. In *Hallmark*, in denying Defendants' motion for summary judgment and finding that pattern or practice was a jury question, the court incorporated the analysis from *Pacific Northwest* and its own opinion in *Taigen. See Hallmark*, 2003 WL 23219807 at *2, 5 (D. Idaho Sept. 29, 2003) ("rather than repeat the detailed analysis set forth in [*Pacific Northwest* and *Taigen*], the Court will . . . cite to those orders for the proposition relied upon in resolving the identical legal question presented here."). However, this

reliance was misplaced because in *Taigen* the court stated that it was unable to find case law discussing pattern or practice claims in the FHA design and construction context, and due to this limited guidance, determined that the pattern or practice claim was a question of fact. *See Taigen*, 303 F. Supp. 2d at 1138. As stated above, *Pacific Northwest* did not consider the pattern or practice claim.

Unlike in *Pacific Northwest*, the United States timely moved this Court to find that JPI's conduct constitutes a pattern or practice of discrimination. U.S. MSJ at 36–38. Moreover, unlike in *Taigen*, the United States has provided the Court with extensive guidance on what establishes a pattern or practice claim in the design and construction context, including references to numerous design and construction cases that have been decided at the summary judgment stage since 2003, when *Taigen* and *Hallmark* were decided. *See* U.S. MSJ at 36–38. Therefore, the Court's reliance on *Pacific Northwest* and *Hallmark* (merely incorporating the analyses of *Taigen* and *Pacific Northwest*) is misplaced. Furthermore, as noted below, the courts in *Taigen*, *Hallmark*, and *Pacific Northwest* granted partial summary judgment for the United States on the denial of rights to a group of persons. *See infra* Part II.B.4.

The Court erred by not adopting the burden-shifting standard in this case, which has been adopted by courts across the country and endorsed by HUD. In short, the properties must comply with a recognized accessibility standard, and *prima facie* case of a violation may be established by showing that the properties do not comply with the Guidelines, which is generally recognized as the least restrictive objective standard. *See* U.S. MSJ at 41 & n.36. JPI responds that it may use whatever evidence or testimony it wishes to show compliance with the FHA. *See* U.S. MSJ at 40–46; U.S. Reply at 4–5, 6–14 (Dkt. 241). This is a question of law that is not only

appropriate for decision on summary judgment, but also a threshold issue that must be decided before a jury can decide any facts that may be in dispute.

3.  **The Court erred by failing to recognize that JPI's experts have not presented evidence of compliance with an alternative recognized, comparable, objective standard that raises a question of material fact under Rule 56.**

The Court misunderstands the purpose of the United States' arguments with regard to JPI's expert testimony. The Court stated:

> Plaintiff objects to the methodology used by Sheriff and Vredenburgh as 'inherently subjective and specific to his physical characteristics and abilities.' However, at least one court has relied on similar testimony in ruling on a motion for summary judgment in an FHA civil enforcement case. Moreover, Daubert-type objections, including objections to the methodology used by an expert, are generally not considered at the summary judgment stage.

Findings & Rec. at 8 n.4 (citations omitted). The United States, however, is not simply objecting to the experts' methodology. The United States is asserting that, under Federal Rule of Civil Procedure 56, JPI's expert testimony based on a wide range of methodologies is not sufficient to meet JPI's burden of demonstrating material facts in dispute regarding whether its properties are compliant with an alternative recognized, comparable, objective measure of accessibility.

Under Rule 56, a non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations and internal quotation marks omitted). Summary judgment must be granted if the nonmoving party has failed to make a sufficient showing on "an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). JPI's experts did not set forth specific facts showing that JPI adhered to an objective accessibility standard. As noted by the Court, JPI's experts found the properties the United States inspected to be "generally accessible and usable by handicapped persons." Findings & Rec. at 8. The Court continued, "According to Sheriff, the properties he surveyed have 'very good overall and general

10

accessibility, usability, and adaptability[,]' notwithstanding a 'few punch-list type' items that negatively impact accessibility. Thus, Sheriff concluded that the properties were designed and constructed in compliance with the FHA. A similar conclusion was reached by Alison Vredenburgh . . . ." *Id.*

Statements concluding that the properties are "generally accessible" or "very good overall" are nonspecific and insufficient to show that the properties surveyed comply with a standard that meets the requirements of the FHA, especially when contrasted with the objective measurements and observations made by the United States' experts. Additionally, a "roll-thru survey" such as those performed by Mr. Sheriff and Dr. Vredenburgh is not a recognized, comparable, objective measure of accessibility.[4] The United States objected to Mr. Sheriff's methodology because his conclusions about the accessibility of properties are derived from his personal ability to navigate the properties. The Court cites *Pacific Northwest* for the proposition that the ability of certain individuals with disabilities to navigate a property raises an issue of material fact about the accessibility of that property. Findings & Rec. at 8 n.4; *see* 2003 WL 24573548 at *13. However, *Pacific Northwest* is inconsistent with a body of cases that have repeatedly rejected such evidence as insufficient to prove accessibility. In *Tanski*, the defendants sought to introduce evidence, in the form of declarations from five residents living at defendants' properties, stating that either they or the disabled individual they resided with did not have difficulty using the various features alleged to violate the FHA. 2007 WL 1017020, at *14. The court declined to follow *Pacific Northwest*, stating:

---

[4] The Court characterized Mr. Sheriff's wheelchair as "specially designed for evaluating accessibility." Findings & Rec. at 8. Mr. Sheriff's "specially designed" wheelchair further illustrates the point that his methodology cannot be an objective standard for accessibility, as it is specific to his wheelchair and his physical characteristics. *See* U.S. MSJ at 42. Additionally, Mr. Sheriff's methodology is not sufficient for evaluating accessibility for disabled persons who do not use wheelchairs.

11

> The Court agrees with the United States that these wholly subjective declarations are not probative on the question of whether the apartments are designed and constructed such that they comply with the requirements of section 3604(f)(3)(C). No reasonable reading of the section supports the view that the Fair Housing Act's requirements may be met by satisfying the accessibility needs of a particular handicapped individual. Rather, a plain reading of section 3604(f)(3)(C) demonstrates that it requires compliance with an objective accessibility standard broadly applicable to handicapped people.

*Id.* The *Tanski* court was persuaded by the United States' detailed expert declaration establishing that the subject dwellings did not comply with HUD guidelines, ANSI standards, or any other recognized accessibility standard. *Id.* at *15 n.9.

The United States' experts' opinions are as detailed and comprehensive as those provided in *Tanski*, and therefore this Court should adopt the approach followed by *Tanski* and a line of cases that have held that evidence that one or more individuals can navigate a property does not create a disputed material fact as to whether the property is accessible. *See Nelson*, 2006 WL 4540542, at *6–7 (overruling ALJ's determination that evidence showing that two disabled persons could navigate the property was sufficient to show property was accessible because it did not meet the requirements of a comparable standard); *United States v. Quality Built Constr.* (*Quality Built II*), 309 F. Supp. 2d 767, 772 n.1 (E.D.N.C. 2003) ("Whether one disabled person may be able to maneuver through the complex and units does not indicate compliance with the Act."); *Olde St. Andrews II*, No. 3:98-CV-630, slip op. at 10–11 (attached as Ex. 16, App. 811–31 to US MSJ) (finding that "while Defendants' demonstration was convincing evidence that these doors were very accessible to Mr. Boston, the Court has insufficient evidence to conclude that these openings provide real accessibility to most disabled persons").

Similarly, the United States objected to Dr. Vredenburgh's methodology because she evaluates the accessibility of properties by photographing her non-disabled associate using a wheelchair throughout the properties. U.S. MSJ at 5–6. Dr. Vredenburgh takes measurements

only in the bathrooms and kitchens and compares those to measurements she has tested in a study that was funded by JPI. *Id*. Dr. Vredenburgh's methodology does not employ a recognized, objective, measurable standard. *See* U.S. MSJ at 42–43. The United States objected to Mark Wales's methodology based on his repeated description of his approach as subjective. *Id.* at 43–46. For example, Mr. Wales described his methodology as relying on "a combination of a lot of things such as safe harbors, the other technical guidance, research, whatever it takes for me to determine whether a reasonable design consistent with the requirements that acts as requirements [sic] has been obtained." *Id.* at 43. Finally, The United States objected to Pete Skarzenski's methodology because his selective use of various safe harbors is also a subjective standard. Cherry-picking among various safe harbors effectively creates a new standard, and safe harbor status may be lost. 73 Fed. Reg. at 63614; *see* U.S. MSJ at 45.

The Court can conduct a preliminary review of expert opinions to determine whether to consider the expert testimony for purposes of the summary judgment motion without deciding "Daubert-type objections." *See Nielsen v. Alcon, Inc.*, No. 3–08–CV–2239–B–BD, 2011 WL 4529762, at *5 (N.D. Tex. Sept. 2, 2011); *Alcan Aluminum Corp. v. BASF Corp.*, 133 F. Supp. 2d 482, 493 (N.D. Tex. 2001). Such an approach would be appropriate for this case. Without making a final determination about the admissibility of the evidence, the Court can consider the United States' arguments about JPI's experts to decide the legal question of whether JPI relied on a recognized, comparable, objective measure of accessibility. Indeed, JPI's experts' opinions underscore the need for determining whether a property complies with the FHA using an objective standard rather than a subjective opinion. The Court should conclude that JPI's experts' methodology leaves no dispute that JPI has not complied with any objective standard.

The Court also erred by finding summary judgment improper because "defendants have adduced at least some evidence that the allegedly defective conditions identified by plaintiff comply with federal accessibility regulations and, thus, do not violate the FHA at all." Findings & Rec. at 11 n.7. As the United States explained in its motion and reply, each condition cited to support summary judgment is one where JPI's expert did not dispute the observation made by the United States' expert, such as a particular measurement or the existence of a step, but rather where JPI's expert disputed whether that particular condition is a violation of the Guidelines or the FHA. U.S. MSJ at 7–10; U.S. Reply at 6–14. The question of whether an undisputed observed condition complies with the FHA is a question of law. Furthermore, even if "some" of the defective conditions are disputed, the vast majority of the conditions cited by the United States are not, *see* U.S. Reply at 6–14, which establishes a pattern or practice of discrimination or denial of rights to a group of persons.[5] Indeed, JPI did not respond to many of the conditions cited by the United States and therefore did not dispute that those conditions violated the Guidelines. *Id*. at 7–10; U.S. MSJ at 7–10. Because JPI has not shown that it complied with another recognized, comparable, objective measure of accessibility, summary judgment on liability is appropriate.

### 4. The Court erred by failing to address the United States' second basis for liability, denial of rights to a group of persons where such denial raises an issue of general public importance.

The United States' motion for summary judgment clearly stated two bases for finding liability for FHA and ADA violations: where a defendant has (1) engaged in a pattern or practice

---

[5] The Court cites Mr. Wales's opinions regarding accessible pedestrian routes and the accuracy of slope measurements taken by the United States' experts. Findings & Rec. at 9. The United States dealt extensively with these arguments in its reply brief, noting that lack of a continuous accessible route was cited in support of the United States' motion only where Mr. Wales did not identify an alternative route or made the legal argument that the FHA does not require such a route. *See* U.S. Reply at 7–8 & n.10. Similarly, the United States cited in support of its motion only those slope measurements that were undisputed or so egregious when compared to the standard provided in the Guidelines that they could not legitimately be explained by JPI's defenses. *See* U.S. MSJ at 22; U.S. Reply at 7–14.

of discrimination, or (2) denied rights to a group of persons where such denial raises an issue of general public importance. 42 U.S.C. §§ 3614(a), 12188(b)(1)(B); *see* U.S. MSJ at 36–38. The Court erred by ignoring the second basis for liability, stating, "Although Plaintiff generally alleges in its complaint that the failure of defendants to design and construct multifamily dwellings in accordance with FHA Guidelines jeopardizes an important public interest, the summary judgment briefing focuses almost exclusively on the pattern or practice claim." Findings & Rec. at 9 n.5. Regardless of whether the litany of barriers identified by the United States, *see* U.S. MSJ at 23–36, constitutes a pattern or practice of discrimination, the Court should find that, based on these undisputed conditions, JPI denied rights to a group of persons and that denial raises an issue of general public importance. 42 U.S.C. 3614(a).[6]

Because JPI has admitted that the properties are not completely compliant, these admissions should themselves warrant granting summary judgment for the United States on the issue of denial of rights to a group of persons. As the *Shanrie* court concluded:

> In this case, there is no question that Rockwood was designed and constructed in a way that totally excludes people with mobility impairments in violation of the FHA. As evinced by the legislative history discussed above, this exclusion amounts to discrimination against disabled persons, which is undoubtedly an issue of great "general public importance." *See United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129, 1138–39 (D. Idaho 2003); *United States v. Hartz Constr. Co.*, No. 97-8175, 1998 WL 42265 at *2 (N.D.Ill.1998) ("It is of course obvious that housing that is inadequately designed and constructed to serve persons with disabilities denies that class of persons rights granted by the Act—and . . . that 'denial raises an issue of general public importance.' Any contention to the contrary is totally myopic or worse.").

---

[6] The Attorney General's determination that a matter raises an issue of general public importance is not reviewable. *See United States v. Bob Lawrence Realty*, 474 F.2d 115, 125 n.14 (5th Cir. 1973); *United States v. Shanrie Co. (Shanrie II)*, 699 F. Supp. 2d 932, 938 (S.D. Ill. 2009) ("[C]ourts have consistently refrained from reviewing the Attorney General's determination that a matter is of general public importance."). Accordingly, under § 3614(a), this Court need only decide whether JPI's conduct denied a group of persons rights guaranteed under the FHA. *See Taigen*, 303 F. Supp. 2d at 1139 ("[T]he Court concludes that if the Taigen Defendants have inadequately designed and constructed Centennial Trail to serve persons with disabilities, the Taigen Defendants have denied a group of persons rights granted by the Fair Housing Act and such a denial raises an issue of general public importance.").

*Shanrie II*, 699 F. Supp. 2d at 938. The Court itself noted that Mr. Sheriff's opinion is that the properties he surveyed were not fully compliant with the accessibility requirements of the FHA and ADA. Findings and Rec. at 8 (noting that Mr. Sheriff observed "'a few punch-list type' items that negatively impact accessibility"). In addition, because JPI did not survey Jefferson at Marymoor, it failed to dispute any of the factual conditions that the United States identified as violations at that property. *See* U.S. MSJ at 5 n.6, Ex. 1, App. 2. Other courts have granted summary judgment to the United States on the issue of denial of rights to a group of persons where defendants admitted that the properties were not wholly compliant with the accessibility requirements of the FHA. *See Hallmark*, 2003 WL 23219807 at *8; *Taigen*, 303 F. Supp. 2d at 1153–54; *Pac. Nw. Elec., Inc.*, 2003 WL 24573548 at *14, 17. Indeed, the Court relied heavily on these cases in denying summary judgment, yet apparently failed to recognize that the courts in those cases did, in fact, grant partial summary judgment for the United States.

**5. The Court erred by failing to recognize that the proper interpretation of the ADA Standards is a question of law, not fact, and the United States is entitled to summary judgment on those claims.**

The Court denied summary judgment for the United States on the ADA violations, stating, "Mark Wales, one of the experts retained by defendants, claims that plaintiff's experts misinterpreted the ADA standards with respect to parking spaces, signage, slope criteria, and accessible routes. As with plaintiff's FHA claim, these competing expert reports raise genuine issues of material fact concerning violations of the ADA standards." Findings & Rec. at 12. However, the proper interpretation of the ADA Standard is a question of law, and where a fact is undisputed, the Court can determine whether that condition violates the ADA as a matter of law. *See* U.S. MSJ at 35–36.

16

The United States did not cite the conditions contested by Mr. Wales in that report in support of its motion for summary judgment. *See* U.S. MSJ at 35–36. To the extent Mr. Wales's opinions in that report can be applied to other properties, they still do not create a disputed issue of law or fact. For example, Mr. Wales's report takes issue with an access aisle measured at 93 inches wide rather than the required 96 inches. *See* Def. MSJ Resp., Ex. 28, App. 502. However, the only access aisle included in the United States' list of violations was 56 inches wide, far short of the requirement. *See* U.S. MSJ at 36 & Ex. 1, Item 424, App. 99. Mr. Wales's report contests issues regarding the height of signage, Def. MSJ Resp., Ex. 28, App. 502, which the United States did not cite in its list of violations. *See* U.S. MSJ at 36. Mr. Wales also argues that a balcony that is part of a leasing center is not a public accommodation. Def. MSJ Resp., Ex. 28, App. 502. This is a legal issue, and HUD has made clear that the ADA accessibility requirements for new construction are applicable to "common areas . . . within residential facilities . . . if they are open to persons other than residents and their guests." Fair Housing: Accessibility Guidelines; Questions and Answers, Supplement to Notice, 59 Fed. Reg. 33362, 33363 (Jun. 28, 1994). Therefore, "[r]ental offices and sales office for residential housing, for example, are by their nature open to the public, and are places of public accommodation and must comply with the ADA requirements in addition to all applicable requirements of the Fair Housing Act." *Id.*

Thus, the evidence the Court cites as creating a factual dispute is either irrelevant to the United States' claims or is a legal dispute about what is required by the ADA. The United States' experts properly interpreted the ADA Standards in determining that a particular observed condition violated the ADA. Therefore, there is no genuine issue of material fact with respect to the ADA violations, and the United States is entitled to summary judgment.

17

**6.  The Court erred by deferring questions of law to the jury.**

In denying summary judgment for the United States, the Court stated that "[i]t is particularly within the jury's ken to examine the more than 500 accessibility barriers alleged by the plaintiff and determine whether such evidence constitutes a pattern or practice of discrimination." Findings & Rec. at 11. However, as noted above, the Court did not adopt the appropriate legal standard for deciding this case. The United States' experts took measurements and made observations about the conditions at the property and compared those conditions to the FHA regulations and the Guidelines. *See* U.S. MSJ at 3–4. Because the observed conditions do not meet the requirements of the Guidelines, *see* U.S. MSJ at 22–36, the United States has established a *prima facie* case of violation of the FHA. To the extent that JPI does not dispute the existence, or fact, of the observed condition and does not show that the condition otherwise complies with another recognized, comparable standard, the United States is entitled to summary judgment on those issues. *See* U.S. MSJ at 11–21, 40–46. The conditions cited by the United States in support of its motion for summary judgment are factually undisputed. *See* U.S. Reply at 6–16. Because the jury is not qualified to determine what is legally required by the FHA, and because the facts here are undisputed, there is no question for the jury to decide.

To the extent that the Court is suggesting that the undisputed facts should be considered by a jury to determine whether JPI has engaged in a pattern or practice of discrimination, the court committed clear error. As a matter of law, more than 500 undisputed barriers to accessibility at 32 properties constitute a pattern or practice of discrimination on the basis of disability. *See* U.S. MSJ at 36–38; U.S. Reply at 16–18. In *Tanski*, for example, the court reasoned:

> [T]he Tanski defendants argue first that there is a question of fact regarding whether they engaged in "a pattern or practice of resistance to the full enjoyment

18

of the rights" granted by the Fair Housing Act. Having already found multiple violations of section 3604(f)(3)(C) in a total of 362 covered units in the McGregor Village Apartments and the six Tanski properties, all built by the Tanski defendants, the Court has no difficulty finding a pattern or practice of Fair Housing Act violations.

2007 WL 1017020 at *24 (citing *Quality Built I*, 309 F. Supp. 2d at 760 (holding that "numerous features planned and constructed in over one hundred units at two separate developments . . . clearly indicate a regular or repeated violation of the protections afforded by the [FHA]")).

As noted above, the cases relied by the Court do not support its conclusion that the issue of pattern or practice is appropriately decided by the jury. *See supra* Part II.B.2. First, *Olde St. Andrews I* is not a pattern or practice case, as it was not brought by the United States. 250 F. Supp. 2d at 708. Only the Attorney General has authority to bring pattern or practice cases under the FHA. 42 U.S.C. § 3614(a). Second, *Pacific Northwest* did not address pattern or practice because it was not briefed in the summary judgment papers. 2003 WL 24573548 at *10. Third, *Hallmark* relies on *Taigen*, and the court in *Taigen* incorrectly deferred the question of pattern or practice to the jury based on limited guidance as to what constitutes a pattern or practice in a design and construction case. *Hallmark*, 2003 WL 23219807 at *2, 5; *Taigen*, 303 F. Supp. 2d at 1138. As established by the cases cited by the United States, there is clear guidance on what constitutes a pattern or practice, and the United States is entitled to summary judgment based on the undisputed facts in this case.

## III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court reject the Findings and Recommendation of the magistrate judge and grant the United States' Motion for Partial Summary Judgment as to Liability against JPI and order JPI to promptly submit both a

detailed remedial plan to address demonstrated violations and a plan for surveying the other properties in JPI's portfolio.

Dated: November 25, 2011

                                   Respectfully submitted,

JAMES T. JACKS                     THOMAS E. PEREZ
United States Attorney             Assistant Attorney General
Northern District of Texas         Civil Rights Division


                                   s/ Andrea K. Steinacker
SUSAN L.S. ERNST                   STEVEN H. ROSENBAUM
Assistant United States Attorney   DC Bar # 417585
United States Attorney's Office    Chief
Northern District of Texas         MICHAEL S. MAURER
1100 Commerce Street, Suite 300    DC Bar # 420908
Dallas, Texas 75242-1699           Deputy Chief
                                   KEVIN J. KIJEWSKI, KY Bar # 86448
                                   JENNIFER E. MCALLISTER, VA Bar # 71180
                                   PAMELA O. BARRON, VA Bar # 20828
                                   NETA BORSHANSKY, CA Bar # 266295
                                   ANDREA K. STEINACKER, WA Bar # 35688
                                   Trial Attorneys
                                   United States Department of Justice
                                   Civil Rights Division
                                   Housing and Civil Enforcement Section
                                   950 Pennsylvania Avenue, N.W. – G St.
                                   Washington, D.C.  20530
                                   202-305-0744
                                   202-514-1116 (fax)

**Certificate of Service**

I, Andrea K. Steinacker, hereby certify that on the 25th day of November, 2011, I served

the Memorandum in Support of United States' Motion for Partial Summary Judgment as to

Liability via the Court's CM/ECF system to:

Christopher B. Hanback  
Lynn E. Calkins  
Rafe Petersen  
Holland & Knight, LLP  
2099 Pennsylvania Avenue, NW  
Suite 100  
Washington, DC 20006-6801  

William L. Sessions  
Sessions Law Firm, P.C.  
325 N. St. Paul, Suite 4400  
Dallas, Texas 75201  


s/ Andrea K. Steinacker  
Andrea K. Steinacker  
Trial Attorney  
U.S. Department of Justice  
Civil Rights Division  
Housing and Civil Enforcement Section  
950 Pennsylvania Avenue, N.W. – G St.  
Washington, D.C.  20530  
Tel: (202) 305-0744  
Fax: (202) 514-1116  
andrea.steinacker@usdoj.gov