# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-cv-0412-B |
| | § | |
| JPI CONSTRUCTION L.P., et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY

SESSIONS LAW FIRM P.C.

By:

/s/ William Lewis Sessions
William Lewis Sessions
Texas Bar No. 18041500

Republic Center - Suite 4400
325 North St. Paul Street
Dallas, Texas 75201
Telephone:  (214) 217-8855
Facsimile: (214) 217-8856
Email:  lsessions@sessionslaw.net

HOLLAND & KNIGHT LLP

By:

/s/ Christopher B. Hanback
Christopher B. Hanback (*Admitted Pro Hac Vice*)
D.C. Bar No. 232579

/s/ Lynn E. Calkins
Lynn E. Calkins (*Admitted Pro Hac Vice*)
D.C. Bar No. 445854

/s/ Rafe Petersen
Rafe Petersen (*Admitted Pro Hac Vice*)
D.C. Bar No. 465542

2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
Telephone: (202) 955-3000
Facsimile: (202) 955-5564
Email: christopher.hanback@hklaw.com
Email: lynn.calkins@hklaw.com
Email: rafe.petersen@hklaw.com

*Counsel for Defendants*

TABLE OF CONTENTS

ARGUMENT ..................................................................................................................... 1

I.     Standard of Review........................................................................................................ 1

II.    The Magistrate Judge Gave Appropriate Deference To The Safe Harbor Relied Upon By
Plaintiff. ...................................................................................................................... 2

     A.     The proper standard of accessibility is found in the FHA itself. .............................. 2

     B.     The Magistrate Judge properly ruled that deviating from the suggested dimensions
in the Guidelines does not constitute unlawful discrimination. .................................. 4

     C.     The Guidelines are not entitled to <u>Chevron</u> deference. ................................................ 5

III.   The Magistrate Judge Applied The Appropriate Legal Framework
For Deciding  Whether A Property Is Accessible, Usable,
Or Adaptable Under The FHA........................................................................................ 8

     A.     Summary Judgment is not proper if there are genuine issues of material fact. ....... 8

     B.     Whether the properties are accessible, usable, or adaptable are genuine issues of
material fact appropriate for the jury. ............................................................................ 9

     C.     Whether there is a pattern and practice of discrimination is a genuine issue of
material fact appropriate for the jury. ........................................................................ 13

IV.   Defendants Presented Substantial, Admissible Evidence Demonstrating There Are
Material Facts In Dispute and Precluding Summary Judgment on Plaintiff's Claim. ...... 14

     A.     Plaintiff's third objection is dependent on its flawed legal analysis. ....................... 14

     B.     The Magistrate Judge properly recognized that Defendants put forth sufficient
evidence to refute Plaintiff's claim................................................................................ 15

     1.    Plaintiff's objection is procedurally without merit. ....................................................... 15

     2.    The Magistrate Judge properly assessed Defendants' experts under  the governing
standard and appropriately considered their testimony................................................. 17

     3.    The testimony of Defendants' experts is not general or conclusory.............................. 19

     4.    There are no "undisputed" conditions. ........................................................................ 20

V.    The Magistrate Judge Gave Proper Consideration To Plaintiff's Assertion
Of The  Denial Of Rights To A Group Of Persons......................................................... 23

VI.   The Magistrate Judge Properly Determined There Were Questions
Of Fact With  Regard To The Alleged ADA Violations. ................................................. 24

CONCLUSION................................................................................................................. 25

## TABLE OF AUTHORITIES

Page(s)

CASES

Access Now, Inc. v. Ambu. Surgery Ctr. Grp, Ltd.,
   No. 99-109, 2001 WL 617529 (S.D. Fla. May 2, 2001)..................................................22, 25

Adams Fruit Co., Inc. v. Barrett,
   494 U.S. 638 (1990)...........................................................................................................6

Alcan Alum. Corp. v. BASF Corp.,
   133 F. Supp. 2d 482 (N.D. Tex. 2001) ..................................................................................16

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986)...........................................................................................................8

Ass'n for Disabled Amer., Inc. v. Concorde Gaming Corp.,
   158 F.Supp.2d 1353 (S.D. Fla. 2001) .....................................................................................5

Baltimore Neighbor., Inc. v. Rommel Builders, Inc.,
   40 F. Supp.2d 700 (D. Md. 1999)...........................................................................................22

Battle v. United States Parole Comm'n,
   834 F.2d 419 (5th Cir. 1987) ...............................................................................................1

Bridge v. Safeco Ins. Co. of America,
   No. 10-944, 2010 WL 5128354 (S.D. Tex. 2010) .................................................................10

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986)...........................................................................................................9

Cherry v. City Coll. of San Francisco,
   No. 04-04981, 2006 WL 6602454 (N.D. Cal. Jan. 12, 2006)..................................................23

Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,
   467 U.S. 837 (1984)................................................................................................2, 5, 6, 7

Christensen v. Harris County,
   529 U.S. 576 (2000)...........................................................................................................7

Cortes-Irizarry v. Corporacion Insular De Seguros,
   111 F.3d 184 (1st Cir. 1997)................................................................................................16

Daubert v. Merrell Dow Pharmaceuticals,
   43 F.3d 1311 (9th Cir. 1995) ...............................................................................................16

Epicrealm Lic., LLC v. Autoflex Leasing, Inc.,
   492 F.Supp.2d 608 (E.D. Tex. 2007).....................................................................................2

Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.,
    210 Fed. Appx. 469 (6th Cir. 2006)................................................................ passim

Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.,
    250 F.Supp.2d 706 (W.D. Ky. 2003), aff'd 210 Fed. Appx. 469 (6th Cir. 2006)..............11, 13

Finley v. Johnson,
    243 F.3d 215 (5th Cir. 2001) ........................................................................2, 16

Imposs. Elec. Techniques, Inc. v. Wackenhut Prot. Sys., Inc.,
    669 F.2d 1026 (5th Cir. 1982) ................................................................................9

In re Paoli R.R. Yard PCB Litigation,
    916 F.2d 829 (3d Cir. 1990)................................................................................17

Indep. Living Aids, Inc. v. Maxi-Aids, Inc.,
    349 F.Supp.2d 509 (E.D.N.Y. 2004) ....................................................................1, 2

Interfaith Cmty. Org. v. Honeywell Intl., Inc.,
    399 F.3d 248 (3d Cir. 2005)................................................................................9

Lofton v. McNeil Consumer & Specialty Pharm.,
    682 F.Supp.2d 662 (N.D. Tex. 2010) ...................................................................10

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)...........................................................................................9

Monigold v. Berkebile,
    No. 07-0750, 2008 WL 623350 (N.D. Tex. March 5, 2008)........................................6

Nationwide Mut. Ins. Co. v. Cisneros,
    52 F.3d 1351 (6th Cir. 1995) ................................................................................7

Nielson v. Alcon, Inc.,
    No. 3-08-C-2239-B-BD, 2011 WL 4529762 (N.D. Tex. Sept. 2, 2011) ..........................16, 17

Padillas v. Stork-Gamco, Inc.,
    186 F.3d 412 (3d Cir. 1999)................................................................................16, 17

Parr v. Kapahulu Inv., Inc.,
    No. 98-00329, 2000 WL 687646 (D. Haw. May 16, 2000)........................................22

Phillips v. Downtown Afford., LLC,
    No. 06-00402, 2007 WL 2668637 (D. Haw. Sept. 5, 2007)......................................22

Pullman-Standard v. Swint,
    456 U.S. 273 (1982)...........................................................................................9

Posey v. Lake Pend Oreille Sch. Dist. No. 84,
    546 F. 3d 1121 (9th Cir. 2008) ....................................................................................9

Rodriguez v. Investco, L.L.C.,
    305 F.Supp.2d. 1278 (M.D. Fla. 2004)......................................................................5

Savannah-Chatham Cnty. Fair Hous. Council v. Genesis Designer Homes, LLC,
    No. CV406-096, slip. op. (S.D. Ga. Jan. 18, 2011) ................................................12

Schaffer v. Weast,
    546 U.S. 49 (2005)....................................................................................................6

Shelter Ins. Co. v. Ford Motor Co.,
    No. 06-60295, 2006 WL 3780474 (5th Cir. 2006) ................................................17

Simpson v. Baronne Veterinary Clinic, Inc.,
    No. 10-3032, 2011 WL 1100263 (S.D. Tex. 2011) ................................................10

Texas v. United States,
    497 F.3d 491(5th Cir. 2007) .......................................................................................7

United States v. Garden Homes Mgmt.,
    156 F.Supp.2d 413 (D.N.J. 2001) ...........................................................................13

United States v. Habersham Properties,
    319 F.Supp.2d 1366 (N.D. Ga. 2003).....................................................................13

United States v. Hallmark Homes, Inc.,
    No. CV-01-432-N-EJL, 2003 WL 23219807 (D. Idaho Sept. 29, 2003) .........11, 24

United States v. Mead Corp.,
    533 U.S. 218 (2001).....................................................................................................7

United States v. Pac. Nw. Elec., Inc.,
    No. 01-019, 2003 WL 24573548 (N.D. Idaho Mar. 21, 2003)...................... passim

United States v. Raddatz,
    447 U.S. 667 (1980).................................................................................................1

United States v. Richard & Milton Grant Co.,
    No. 2:01-cv-2069, slip. op. (W.D. Tenn. Apr. 27, 2004)........................................12

United States v. Shanrie Co., Inc.,
    669 F.Supp.2d 932 (S.D. Ill. 2009)....................................................................20, 24

United States v. Shanrie Co., Inc.,
    No. 05-CV-306-DRH, 2007 WL 980418 (S.D. Ill. March 30, 2007) .....................12

United States v. Taigen & Sons, Inc.,
    303 F.Supp.2d 1129 (D. Idaho 2003) ............................................................. passim

United States v. Tanski,
    No. 1:04-CV-714, 2007 WL 1017020 at *11 (N.D.N.Y. March 30, 2007)............................12

Venturelink Holdings, Inc. v. Kirkpatrick & Lockhart, L.L.P.,
    CA No. 3:05-CV-2103-L, 2006 WL 2844121 (N.D. Tex. Oct. 2, 2006) ...................................9

Whitmire v. Terex Telelect Inc.,
    390 F.Supp. 2d540 (E.D. Tex. 2005) ........................................................................................ 9

**STATUTES**

28 U.S.C. § 636.................................................................................................................................1

42 U.S.C. § 3604(f)..........................................................................................................2, 3, 4, 6, 10

42 U.S.C. § 3614(a) ........................................................................................................................23

**OTHER AUTHORITIES**

53 Fed. Reg. 44992 ...........................................................................................................................4

56 Fed. Reg. 9472 .....................................................................................................................4, 5, 7

59 Fed. Reg. 33362 ...........................................................................................................................5

F.R.C.P. 56................................................................................................................................8, 9, 14

F.R.C.P. 72.......................................................................................................................................1

F.R.E. 104 ........................................................................................................................................16

F.R.E. 702 ........................................................................................................................................16

F.R.E. 703 ........................................................................................................................................16

F.R.E. 1006 ......................................................................................................................................20

H.R. Rep. No. 100-711 ......................................................................................................................4

Local Rule 72.2 ................................................................................................................................1

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, Local Rule 72.2, and 28 U.S.C. § 636, Defendants hereby respond to Plaintiff's Objections to Magistrate Judge Kaplan's Findings and Recommendation dated November 10, 2011 (Dkt. #245).   Defendants request that Plaintiff's Objections be overruled on all grounds and that the Magistrate Judge's Findings and Recommendation (Dkt. #243) be adopted and entered as the order of this Court.

## ARGUMENT

The Magistrate Judge's ruling is simple and precise.  Plaintiff's legal theory of this case is wrong, and Defendants presented ample evidence demonstrating the properties are accessible and usable to persons with disabilities sufficient for this dispute to proceed to trial.  Hoping to avoid having this dispute presented to a fact finder, Plaintiff filed six objections to the Magistrate Judge's Findings and Recommendation.  (Dkt. #245).  The objections are circular in nature, and each are without legal or factual merit.  The Magistrate Judge's Findings and Recommendation should be adopted; Plaintiff's Objections should be overruled; and this matter should be scheduled for trial as expeditiously as this Court's docket permits.

## I.    Standard of Review.

Under 28 U.S.C. § 636(b), a district judge shall make a de novo determination of those portions of the magistrate judge's report or specific proposed findings or recommendations to which an objection has been made unless the objection is frivolous, conclusive, or general in nature.  Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

In conducting an independent de novo determination based on its review of the record, this Court is permitted to rely upon the magistrate judge's proposed findings and recommendations.  United States v. Raddatz, 447 U.S. 667, 676 (1980) ("Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate judge's proposed findings and recommendations."); Indep. Living Aids,

Inc. v. Maxi-Aids, Inc., 349 F.Supp.2d 509, 515 (E.D.N.Y. 2004).  Issues raised for the first time

in objections to a magistrate judge's proposed findings and recommendations are not properly

before the district judge.  Finley v. Johnson, 243 F.3d 215, 219 n.3 (5th Cir. 2001) (declining to

consider arguments raised for the first time in objection to magistrate judge's report); see also

Epicrealm Licensing, LLC v. Autoflex Leasing, Inc., 492 F.Supp.2d 608, 613 (E.D. Tex. 2007).

## II.    The Magistrate Judge Gave Appropriate Deference To The Safe Harbor Relied Upon By Plaintiff.

Plaintiff's first objection is that the Magistrate Judge did not give appropriate credence to

Plaintiff's assertions that the Fair Housing Act ("FHA") requires use of a recognized, objective

standard.  Instead, Plaintiff argues the Magistrate Judge should give Chevron deference to a

federal agency's technical assistance as if that assistance had the force of law.  Yet, the

Magistrate Judge gave proper consideration to the safe harbor at issue.  The Magistrate Judge did

not "ignore" the safe harbor as Plaintiff asserts in its Objections, but rather treated it consistent

with the scope of the promulgating agency's authority and the document's own stated purpose

and limits.  (Dkt. #237 at 9-11, 16-23).[1]

### A.    The proper standard of accessibility is found in the FHA itself.

In order to prevail on its claims under the FHA, Plaintiff has the burden to prove that

each defendant sued has discriminated in the terms, conditions, or privileges of sale or rental of

each dwelling at issue, or the provision of services or facilities in connection with such

dwellings, because of a handicap.  42 U.S.C. § 3604(f)(3)(C).

The legal definition of "discrimination" is whether the defendants failed to design and

construct the covered buildings and facilities at issue to include:

- at least one building entrance on an accessible route, unless it is impractical to do so because of the terrain or unusual characteristics of the site;

---

[1] The page numbers for docket entries cited herein refer to the page numbers at the top of the filed document as denoted by the Court's electronic filing system.

- public use and common use portions that are readily accessible and usable;

- doors designed to allow passage that are sufficiently wide to allow passage; and

- premises containing the following features of adaptive design:
  (i) an accessible route into and through the dwelling;
  (ii) light switches, electrical outlets, thermostats, and other environmental controls located in accessible locations;
  (iii) reinforcements in bathroom walls to allow later installation of grab bars; and
  (iv) usable kitchens and bathrooms such that a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3)(C).

With respect to a design and construction case brought under the FHA, the dispositive question at issue is whether the dwelling units and common areas as designed and constructed are reasonably accessible to most persons with disabilities. See Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc., 210 Fed. Appx. 469, 482 (6th Cir. 2006). Accessibility itself is the ultimate touchstone by which conformity with the FHA is determined. United States v. Taigen & Sons, Inc., 303 F. Supp. 2d 1129, 1151 (D. Idaho 2003).

As recognized by the Magistrate Judge, Congress did not mandate compliance with any specific technical design criteria in order to satisfy the requirements of the Act and did not authorize any federal entity with the authority to promulgate binding standards. (Dkt. #243 at 10; see also Dkt. #237 at 20-22). Instead, allowing for flexibility and creativity, Congress suggested several options by which a developer could meet the provisions of the Act. The FHA states that compliance with the accessibility standards published by the American National Standards Institute Inc. ("ANSI") "suffices to satisfy" the FHA, 42 U.S.C. § 3604(f)(4), as would compliance with a municipal law that incorporates the provisions of the FHA, 42 U.S.C. § 3604(f)(5)(A). The Department of Housing and Urban Development ("HUD") was empowered with limited authority to "provide technical assistance to States and units of local government and other persons to implement the requirements of" the Act. See 42 U.S.C. § 3604(f)(5)(C).

3

But, the legislative history makes clear Congress contemplated that designers would and should employ "other creative methods" to achieve compliance rather than limit themselves to the few articulated options set forth by Congress.   Id.; (Dkt. #237 at 21-22; Dkt. #242 at 10-12).

Congress specifically rejected "a standard of total accessibility [that] would require that every entrance, doorway, bathroom, parking space, and portion of buildings and grounds be accessible" choosing instead "to use a standard of 'adaptable' design" that would "provide usable housing for handicapped persons without necessarily being significantly different from conventional housing."  H.R. Rep. No. 100-711, at 18, reprinted in 1988 U.S.C.C.A.N. 2173, 2179, 2187; (Dkt. #237-5, App. 88-91).

**B.      The Magistrate Judge properly ruled that deviating from the suggested dimensions in the Guidelines does not constitute unlawful discrimination.**

Far from ignoring the Guidelines as Plaintiff contends, the Magistrate Judge properly gave the Guidelines their due significance, finding that:

> Even if all the conditions identified by the Plaintiff deviate from the specifications in the FHA Guidelines, the guidelines are neither mandatory nor prescribe specific requirements, which if not met, would constitute unlawful discrimination. There are other ways to achieve compliance with the accessibility requirements of the FHA.

(Dkt. #243 at 10).

This interpretation is based on HUD's own statements.  (Dkt. #243 at 10-11 (citing 56 Fed. Reg. 9472, 9478 (March 6, 1991)); Dkt. #237 at 27-29).  As acknowledged by the Magistrate Judge, HUD clearly states that "the Guidelines are not mandatory, nor do they prescribe specific requirements which must be met, and which, if not met, would constitute unlawful discrimination under the Fair Housing Act."  56 Fed. Reg. at 9473 (emphasis added); see also 53 Fed. Reg. 44992, 45004 (Nov. 7, 1988).[2]  Merely a safe harbor, the Guidelines

---

[2] Similarly, "a dwelling unit that complies fully with the ANSI Standard goes beyond what is required by the [FHA]," as ANSI is "more stringent."  56 Fed. Reg. at 9476 (emphasis added).

"simplify compliance with the [FHA] by providing guidance concerning what constitutes

acceptable compliance with the Act."  56 Fed. Reg. at 9472.

The "safe harbors" are just that -- protection for those seeking clear measures of

compliance -- not an inflexible directive forming the basis for liability.  Rodriguez v. Investco,

L.L.C., 305 F.Supp.2d. 1278, 1282, fn. 15 (M.D. Fla. 2004); Ass'n for Disabled Amer., Inc. v.

Concorde Gaming Corp., 158 F.Supp.2d 1353, 1362 (S.D. Fla. 2001).  It has always been clear

that "builders and developers may choose to depart from the Guidelines and seek alternate ways

to demonstrate that they have met the requirements of the Fair Housing Act."  56 Fed. Reg. at

9473; 59 Fed. Reg. 33362 (1994); United States v. Pac. Nw. Elec., Inc., No. 01-019, 2003 WL

24573548, *12 (N.D. Idaho Mar. 21, 2003).  The fact a property does not strictly conform to the

Guidelines "does not constitute unlawful discrimination."  Id.

 Magistrate Judge Kaplan recognized that the requirements are set forth in the Act and

that Defendants must not be foreclosed from presenting a defense if there is contrary evidence

demonstrating that the dwelling units and common areas as designed and constructed are

reasonably accessible to most persons with disabilities.  (Dkt. #243 at 10); Fair Hous. Council,

210 Fed. Appx. at 482.  Defendants' presentation of proof meets this standard.

### C.    The Guidelines are not entitled to Chevron deference.

Plaintiff boldly asserts that, because "[t]he need to demonstrate compliance using an

objective, comparable standard has been HUD's consistent policy since the issuance of the

implementing regulations in 1989," this Court needs to give Chevron deference to HUD's

interpretation of the FHA.  (Dkt. #245 at 8-10).  Plaintiff's analysis of the standard for deference

to federal agencies, however, is inconsistent with long settled principles of administrative law

and is contradicted by the very documents upon which Plaintiff relies.

It is well established that the allocation of the burden of proof is decided by Congress or reserved for the courts -- not HUD.  Schaffer v. Weast, 546 U.S. 49, 57-58 (2005).  HUD's limited delegated authority to provide "technical assistance" "does not empower [HUD] to regulate the scope of the judicial power vested by the [FHA]." Adams Fruit Co., Inc. v. Barrett, 494 U.S. 638, 650 (1990).  As Congress established the enforcement scheme independent of HUD, "it would be inappropriate to consult executive [or agency] interpretations" of how such enforcement should be carried out, including as to the burden of proof.  Id.; (Dkt. #237 at 29-32).

Chevron deference is proper only if (1) Congress "has not directly addressed the precise question," (2) the agency has acted pursuant to an express or implicit delegation of authority, and the agency's interpretation of the statute is "reasonable," rather than "arbitrary, capricious, or manifestly contrary to the statute," and (3) it appears that Congress delegated authority to the agency generally to make rules carrying the force of law and the agency interpretation claiming deference was promulgated in the exercise of that authority."  See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-45 (1984); see also Monigold v. Berkebile, No. 07-0750, 2008 WL 623350 (N.D. Tex. March 5, 2008).   Although lacking on any one prong precludes deference, Plaintiff's request fails on all three.

First, in determining whether the Court should defer to an agency, the primary question is "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842.   Here, Congress has defined discrimination and thus has addressed the question at issue.

Second, contrary to Plaintiff's statement, HUD was not delegated authority to issue proscriptive enforcement standards and the Guidelines do not set forth requirements that have the force of law.  The limitations on Congress's delegation of authority to HUD are clear:  HUD is only authorized to provide "technical assistance."  42 U.S.C. § 3604(f)(5)(C).  In HUD's own words, "[t]here is no statutory authority to establish one nationally uniform set of accessibility

standards."  56 Fed. Reg. at 9478.

Third, a court should defer to an agency's interpretation only "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." United States v. Mead Corp., 533 U.S. 218, 226-227 (2001); Christensen v. Harris County, 529 U.S. 576, 587 (2000) ("policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law--do not warrant Chevron-style deference.").  Where an agency's actions are "inconsistent with a statutory mandate," they cannot be given Chevron deference.  Nation. Mut. Ins. Co. v. Cisneros, 52 F.3d 1351, 1359 (6th Cir. 1995); see also Texas v. United States, 497 F.3d 491, 501(5th Cir. 2007).

Here, HUD recognized that the Guidelines constitute mere "recommended specifications," 56 Fed. Reg. at 9499, and do not provide mandatory, or even presumptive, design specifications "which must be met."  Id. at 9473.  In issuing the Guidelines, HUD did not "set out with a lawmaking pretense in mind[.]"  Mead, 533 U.S. at 233.  They are, therefore, "beyond the Chevron pale," and neither command nor allow presumptive deference.  Id. at 234. The court need not defer to an agency's interpretation when, as here, "the regulation itself indicates that its command is permissive and not mandatory."  Christensen, 529 U.S. at 588.

Furthermore, to the extent it plays a role in this Court's assessment, contrary to Plaintiff's bold assertion, the need to demonstrate compliance with a "recognized, objective standard" has not been HUD's "consistent policy."  (Dkt. #245 at 8).  HUD itself offers other "technical assistance" such as the Fair Housing Accessibility First website and call line,[3] and Plaintiff's own

---

[3]  See http://www.fairhousingfirst.org ("Fair Housing Accessibility FIRST is an initiative designed to promote compliance with the Fair Housing Act design and construction requirements. The program offers comprehensive and detailed instruction programs, useful online web resources, and a toll-free information line for technical guidance and support.").

experts answer questions for HUD relying on different literature and the interpretations of other experts. (Dkt. #242-5, App. 16). One of Plaintiff's experts acknowledged that:

> When we render these opinions, the first thing I do is do a literature search beginning with the guidelines and the preamble to the guidelines. I then incorporate issues having to do with the ANSI standard. I will look at issues having to do with the supplemental answers and questions that HUD has produced in '94. I will look at the FAQs on the Fair Housing First Hotline. And then I will actually also look at interpretations of the issue by other experts. There is generally kind of a chain of search amongst a variety of different literatures that may be as many as seven different locations until I have basically what I think is a complete answer ready for the draft to be reviewed by the partners.

(Dkt. #242-5, App. 16). Another of Plaintiff's experts explained that design decisions often come down to "professional judgment." (Dkt. #242-6, App. 19). If Plaintiff's experts consult other literature and expert opinion to advise the public on compliance while working for HUD, then surely Defendants may use information other than the safe harbors to defend themselves.

**III. The Magistrate Judge Applied The Appropriate Legal Framework For Deciding Whether A Property Is Accessible, Usable, Or Adaptable Under The FHA.**

Plaintiff's second and sixth objections overlap. Plaintiff contends that the Magistrate Judge applied the incorrect legal framework and, in doing so, erroneously deferred questions of law to the jury. Specifically, Plaintiff contends that two factual determinations are actually legal decisions which should be resolved by the Court: (a) what is accessible, usable, and/or adaptable at a particular property and (b) whether pattern and practice of discrimination should be found. In making its arguments, Plaintiff ignores relevant case law and fails to account for the wealth of factual information refuting Plaintiff's assertions. (See Dkt. #237 at 28-41). These matters were properly left to the jury.

**A. Summary Judgment is not proper if there are genuine issues of material fact.**

Summary judgment shall be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Summary judgment is not appropriate if the nonmoving

party shows affirmative evidence of disputed material facts. F.R.C.P. 56(e); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Where a motion for summary judgment raises mixed questions of fact and law, the court's role is not to resolve factual issues. <u>Whitmire v. Terex Telelect Inc.</u>, 390 F. Supp. 2d 540 (E.D. Tex. 2005). Likewise, summary judgment is inappropriate, even if there are no disputed facts, where reasonable minds could differ on the inferences arising from any undisputed facts. <u>Imposs. Elec. Techniques, Inc. v. Wackenhut Prot. Sys., Inc.</u>, 669 F.2d 1026, 1031 (5th Cir. 1982); <u>Venturelink Holdings, Inc. v. Kirkpatrick & Lockhart, L.L.P.</u>, CA No. 3:05-CV-2103-L, 2006 WL 2844121 (N.D. Tex. Oct. 2, 2006). The evidence of the non-moving party is to be believed; all justifiable inferences are to be drawn in its favor; and any and all doubts as to the existence of a factual dispute are to be resolved against the moving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

> **B.   Whether the properties are accessible, usable, or adaptable are genuine issues of material fact appropriate for the jury.**

Contrary to Plaintiff's assertions, whether a property is accessible, usable, or adaptable cannot be determined on summary judgment when there is contrary evidence because the question of accessibility, usability, and adaptability are principally fact questions -- or at best mixed questions of law and fact. (Dkt. #243 at 10-11; Dkt. #237 at 19-20).

Mixed questions of fact and law must be determined by a fact-finder. <u>Whitmire</u>, 390 F.Supp. 2d at 540. The Supreme Court has described mixed questions of law and fact as "questions in which…the issue is whether the facts satisfy the statutory standard." <u>Pullman-Standard v. Swint</u>, 456 U.S. 273, 289 n.19 (1982); <u>see</u> <u>Posey v. Lake Pend Oreille Sch. Dist. No. 84</u>, 546 F. 3d 1121 (9th Cir. 2008) (mixed questions of fact and law require "concrete and practical, rather than abstract and formal" determinations to be made by a jury); <u>Interfaith Comm. Org. v. Honeywell Intl., Inc.</u>, 399 F.3d 248, 269-70 (3d Cir. 2005) (Ambro, J., conc.).

Accessibility and usability are not defined in the FHA, and these terms cannot be defined simply by comparing measurements to the non-mandatory safe harbors.   For example, the first requirement of the Act is that there be at least one building entrance on an accessible route, unless it is impractical to do so, 42 U.S.C.§ 3604(f)(3)(C).   Yet, Plaintiff asks this Court to conclude that the Act requires, as a matter of law, that sidewalks in their current condition not exceed 2% cross-slope.   Plaintiff asserts that, because its experts measured one spot on a sidewalk to exceed that percentage, this Court can find, as a matter of law, that the entire sidewalk was not designed and constructed to be accessible.

However, as the Magistrate Judge correctly found, Plaintiff is wrong as "the guidelines are neither mandatory nor prescribe specific requirements which, if not met, would constitute unlawful discrimination."  (Dkt. #243 at 10).  Instead, the question of whether one spot on a sidewalk with a higher percentage than 2% slope means that the sidewalk is inaccessible is a material factual question in dispute.  Conflicting expert testimony is sufficient to present a "genuine issue" of material fact.  Simpson v. Baronne Veterinary Clinic, Inc., No. 10-3032, 2011 WL 1100263, *5 (S.D. Tex. 2011); Bridge v. Safeco Ins. Co. of America, No. 10-944, 2010 WL 5128354, *6 (S.D. Tex. 2010); Lofton v. McNeil Consumer & Specialty Pharm., 682 F.Supp.2d 662, 679 (N.D. Tex. 2010).

Defendants presented expert opinions that cross slopes greater than 2% are accessible and usable; Defendants demonstrated that Plaintiff failed to show the true extent of the slope; Defendants have presented facts which demonstrate that soil moves such that it is a maintenance -- not design and construction -- issue; Defendants have presented evidence that minor divergences in slope are acceptable and within construction tolerances; and, Defendants have presented evidence that not all sidewalks are intended to be the accessible route.  (Dkt. #237 at 43-48).  All of these are questions of fact that are relevant to Plaintiff's allegations.

10

And, the same is true for all of the other issues raised by Plaintiff. Plaintiff wants this Court to rule as a matter of law that various features must meet a particular height or dimension by equating the terms "accessible" and "usable" with the dimensions in the safe harbors. For each such feature, Defendants have demonstrated that the optional safe harbors are not the definition of "accessible" and "usable" for various reasons. (Dkt. #237 at 27-29, 34-37, 40-50).

Hoping to ignore the weighty evidence contradicting Plaintiff's claim, Plaintiff fixates on how it is going to prove its *prima facie* case and muddles that concept with an objection that the Magistrate Judge failed to shift the burden against the Defendants. (Dkt. #245 at 10-15). However, directly contrary to that objection, the Magistrate Judge expressly considered the issue of burden-shifting and found it to be non-determinative here. (Dkt. #243 at 10-11). The Magistrate Judge properly recognized that, regardless of whether the court shifts the burden or not, Defendants met that burden such that the matter should proceed to a jury for decision. (Dkt. #243 at 11, n.7 and 10-11 ("defendants have adduced at least some evidence that the allegedly defective conditions identified by plaintiff comply with federal accessibility regulations and, thus, do not violate the FHA at all.")).

Moreover, the Magistrate Judge would have been justified in refusing to shift the burden had he opted to do so. Given that the safe harbors do not establish a minimum requirement for compliance with the Act, failure to meet any of the various safe harbors cannot logically create a rebuttable presumption, a *prima facie* case, or a per se violation of the FHA. See, e.g. Fair Hous. Council, Inc. v. Village of Olde St. Andrews, Inc., 250 F. Supp. 2d 706, 720 (W.D. Ky. 2003), aff'd 210 Fed. Appx. 469 (6th Cir. 2006) ("The Court cannot grant summary judgment for Plaintiffs where the only uncontested evidence presented by Plaintiffs is a failure to meet the requirements set out in HUD's Guidelines."); United States v. Hallmark Homes, Inc., No. CV-01-432-N-EJL, 2003 WL 23219807 at *8 (D. Idaho Sept. 29, 2003) (defendants raised issues of fact

precluding the entry of summary judgment as whether the kitchens, bathrooms, and location of outlets were accessible and useable); Pac. Nw., 2003 WL 24573548 at *13 (non-compliance with the Guidelines does not establish a violation of the FHA).

Plaintiff's reliance on particular authority fails to account for the specific facts of those cases. (Dkt. #245 at 11-12). In each of the cases Plaintiff relies upon, the defendants did not offer specific evidence of a genuine issue to be tried; the violations were conceded. See Savannah-Chatham Cnty. Fair Hous. Council v. Genesis Designer Homes, LLC, No.CV406-096, slip. op. at 37 (S.D. Ga. Jan. 18, 2011) ("[Defendants] do not contest that the properties are not fully FHA compliant."); United States v. Shanrie Co., Inc., No. 05-CV-306-DRH, 2007 WL 980418, at *3 ("it is basically undisputed that [the property] is not in compliance with the accessibility requirements contained in the FHA"); United States v. Tanski, No. 1:04-CV-714, 2007 WL 1017020 at *14 (N.D.N.Y. March 30, 2007) (defendants did not dispute the accuracy of measurements or observations or contend that the apartments comply with any objective accessibility standards); United States v. Richard & Milton Grant Co., No. 2:01-cv-2069, slip. op. at 14-23 (W.D. Tenn. Apr. 27, 2004) (defendants admitted the existence of inaccessible features); Taigen, 303 F.Supp. at 11 (defendants conceded violations of the FHA).[4]

It is axiomatic that where there is evidence offered contradicting Plaintiff's claim, such as here, the case must proceed beyond summary judgment. Whether Plaintiff will be able to meet its ultimate burden of proof if the only evidence it has is non-compliance with the safe harbors can be decided as a matter of law after Plaintiff presents its full affirmative factual case at trial.

---

[4] Plaintiff's citation to Pacific Northwest fails to explain that the court granted partial summary judgment only on the issues where the allegation was undisputed. (Dkt. #245 at 16); see Pac. Nw., 2003 WL 24573548 at *14, 17. For the disputed allegations, the court found that summary judgment was not appropriate. Pac. Nw., at *12-14.

**C.    Whether there is a pattern and practice of discrimination is a genuine issue
of material fact appropriate for the jury.**

The Magistrate Judge also correctly applied the governing law for "pattern and practice"

cases in holding that it is a question of fact for the jury.  (Dkt. #243 at 9-10).  The law is clear.

Summary judgment is <u>not</u> appropriate where there are material questions of fact as to whether a

defendant engaged in a pattern and practice of discrimination.   "Each case must be evaluated on

an individual basis and 'turn on its own facts.'" <u>United States v. Habersham Properties</u>, 319

F.Supp. 2d 1366, 1373 (N.D. Ga. 2003) (when there is an offer of conflicting evidence, the court

cannot decide on summary judgment whether a defendant has engaged in a pattern and practice

of discrimination because this determination requires weighing evidence); <u>see also</u> <u>United States</u>

<u>v. Garden Homes Mgmt.</u>, 156 F.Supp.2d 413, 420 (D.N.J. 2001).  These are the cases that the

Magistrate Judge relied on in determining that the question of pattern and practice is a question

of fact for the jury, but Plaintiff ignores them altogether in its Objections.  (Dkt. #243 at 12).

Instead, Plaintiff attempts to distinguish three cases not relied upon by the Court on this

issue, and Plaintiff misstates even that case law.  Plaintiff suggests that the court in <u>Pacific</u>

<u>Northwest</u> did not address the issue of pattern and practice.  (Dkt. #245 at 24).  However, the

court found that there were genuine questions of material fact regarding whether the defendants

were engaged in a pattern and practice of discrimination.  <u>Pac. Nw.</u>, 2003 WL 24573548 at *10-

11.  Likewise, in <u>Taigen</u>, contrary to Plaintiff's assertions, the court properly relied on FHA

precedent in determining that the pattern and practice issue presents a factual question to be

made by the fact-finder.  303 F.Supp. 2d at 1138.  The third case, <u>Fair Hous. Council, Inc</u>., is not

a pattern and practice case, but no one has represented that it was, so Plaintiff's reference is

confused.  250 F.Supp.2d 706 (W.D. Ky 2003).

In addition to the case law establishing that "pattern and practice" is a factual question, it

is also plain that, to establish a pattern and practice of discrimination, Plaintiff must show that

13

discrimination is "the company's *standard operating procedure*, the regular rather than the unusual practice." (Dkt. #243 at 9-10 (citing Int'l Bd. of Teamsters v. United States, 431 U.S. 324, 336 (1977)). In contrast, here, the record shows a careful, deliberate, and concerted effort at compliance throughout design and construction by hiring qualified professionals, mandating that certain standards are met, and overseeing the process to ensure that such goals were achieved. (Dkt. #237 at 11-16; see, e.g., Dkt. #237-7, App. 99-101, 104; Dkt. #237-14, App. 277-78; Dkt. #237-11, App. 230-31).

Hence, the Magistrate Judge reasonably and properly concluded that, "[j]udged against these standards, the court has little difficulty concluding that plaintiff is not entitled to summary judgment on its FHA pattern or practice claim." (Dkt. #243 at 10).

## IV. Defendants Presented Substantial, Admissible Evidence Demonstrating There Are Material Facts In Dispute and Precluding Summary Judgment on Plaintiff's Claim.

Plaintiff raises a third objection that Defendants' retained experts fail to offer sufficient evidence refuting Plaintiff's assertions in order to preclude judgment from being summarily entered under Rule 56.[5] (See Dkt. #237 at 29-31). Again, this objection is without merit.

### A. Plaintiff's third objection is dependent on its flawed legal analysis.

Plaintiff asserts that Defendants' experts fail to refute Plaintiff's experts directly and thus fail to present evidence sufficient to defeat summary judgment under Rule 56. (Dkt. #245 at 15-16). At its core, Plaintiff's objection is based on the incorrect notion that Defendants are obligated to present evidence of strict compliance with what Plaintiff views to be a recognized, objective standard in order to avoid having judgment summarily entered.

---

[5] In addition to the expert reports, Defendants submitted substantial other evidence regarding the design and construction process undertaken to ensure compliance, including testimony from third-party design professionals, (Dkt. #239-1, App. 1208-10; Dkt. #237-69, App. 1204-06; Dkt. #237-11, App. 213-49; Dkt. #237-12, App. 250-62), documents used during the design and construction process, (Dkt. #237-13, App. 264-72; Dkt. #237-17, App. 323-30), and testimony from employees, (Dkt. #237-16, App. 290-321; Dkt. #237-7, App. 99-106).

14

As stated above and as Magistrate Judge Kaplan correctly held, compliance with an optional safe harbor is not the determinative legal test. Rather, the question turns on accessibility itself. See Fair Hous. Council, 210 Fed. Appx. at 482; Taigen, 303 F. Supp. 2d at 1151; Pac. Nw., 2003 WL 24573548 at *12. Defendants are not required to adopt Plaintiff's theory of the case and show that the features at issue match measurements set forth in the standards endorsed by Plaintiff. Rather, Defendants are permitted to employ "other creative methods" to demonstrate compliance.[6] Pac. Nw., 2003 WL 24573548 at *12; (Dkt. #237 at 21-22; Dkt. #242 at 10-12).

### B. The Magistrate Judge properly recognized that Defendants put forth sufficient evidence to refute Plaintiff's claim.

As found by the Magistrate Judge, Defendants put forth expert testimony "that all 32 JPI properties are accessible to and usable by persons with disabilities." (Dkt. #243 at 10-11). Frustrated, Plaintiff boldly asserts that the Magistrate Judge could have conducted a preliminary review of the experts and that, had such review been conducted, the Magistrate Judge could have excluded Defendants' expert testimony regarding the accessibility of the properties. (Dkt. #245 at 18). Again, Plaintiff's objection is without merit.

### 1. Plaintiff's objection is procedurally without merit.

Regardless of whether the Magistrate Judge could have undertaken a more detailed review of the experts if requested, the consideration the Magistrate Judge allocated to Defendants' experts is supported by the very authority on which Plaintiff relies.

As an initial matter, Plaintiff never expressly challenged the admissibility of Defendants' experts. To date, Plaintiff has only raised a concern that the opinions of the experts failed to respond to Plaintiff's assertions because they are based on what Plaintiff considers to be a

---

[6] Indeed, as discussed herein and recognized by the Magistrate Judge, two of Defendants' experts offer opinions based on the very safe harbors Plaintiff is contending that Defendants must rely upon so this entire argument is a red-herring. Even if some portion of Defendants' expert testimony were to be stricken or limited at some later date, Defendants have still submitted evidence refuting Plaintiff's claim and mandating that the issues proceed to trial.

subjective methodology rather than what Plaintiff's views as an objective application of the safe harbors. (Dkt. #245 at 15-16; Dkt. #236 at 50-54). Nowhere did Plaintiff ask for a Rule 104 hearing, move to strike Defendants' experts, or even cite to Federal Rules of Evidence 702 or 703 or to <u>Daubert</u>. Dissatisfied with the outcome of its motion, Plaintiff cannot place new arguments and issues before the Court. <u>Finley v. Johnson</u>, 243 F.3d 215, 219 n.3 (5th Cir. 2001).

The consideration the Magistrate Judge afforded Defendants' expert witnesses was fully in accordance with the governing law, including the cases Plaintiff cites. The law is plain. As <u>Daubert</u> challenges require a rigorous examination, they are better suited for evidentiary hearings than summary judgment proceedings. (Dkt. #243 at 8, n.4). Although it is correct that a court may exclude expert testimony at the summary judgment stage, it is also clear that "courts should be more careful about excluding testimony than including testimony at the summary judgment stage." <u>Alcan Alum. Corp. v. BASF Corp.</u>, 133 F. Supp. 2d 482 (N.D. Tex. 2001). The court's primary concern is "'affording the proponent of the evidence adequate opportunity to defend its admissibility' before excluding it." <u>Nielson v. Alcon, Inc.</u>, No. 3-08-C-2239-B-BD, 2011 WL 4529762, *5 (N.D. Tex. Sept. 2, 2011), rec. adopted, 2011 WL 4529674 (N.D. Tex. Sept. 30, 2011) (internal citations omitted). <u>See also</u> <u>Cortes-Irizarry v. Corporacion Insular De Seguros</u>, 111 F.3d 184, 188 (1st Cir. 1997)) ("Courts must be cautious -- except when defects are obvious on the face of a proffer -- not to exclude debatable…evidence without affording the proponent of the evidence the opportunity to defend its admissibility.") "Because the summary judgment process does not conform well to the discipline that <u>Daubert</u> imposes, the <u>Daubert</u> regime should be employed with great care and circumspection at the summary judgment stage." <u>Nielsen</u>, 2011 WL 4529762 at *5.

Plaintiff suggests that the Magistrate Judge did not conduct a preliminary review of Defendants' experts. (Dkt. # 245 at 18). However, Magistrate Judge Kaplan did review the

16

qualifications and testimony of Defendants' experts in a manner parallel to the concerns raised by

Plaintiff and that review was sufficient for summary judgment.  (Dkt. #243 at 8-9, 12).[7]  In fact,

under these circumstances, a decision to exclude the evidence without first holding an

unrequested hearing on the matter would have been an abuse of discretion and constitute

reversible error.  See Nielson, 2001 WL 459762 at *5.  See also Padillas v. Stork-Gamco, Inc.,

186 F.3d 412 (3d Cir. 1999); In re Paoli R.R. Yard PCB Litigation, 916 F.2d 829, 855 (3d Cir.

1990) (setting aside summary judgment where expert testimony was excluded).   Defendants'

experts are qualified to testify, and, so long as the evidence put forth is competent, the evidence

is to be considered at the summary judgment stage.  Cf. Shelter Ins. Co. v. Ford Motor Co., No.

06-60295, 2006 WL 3780474 (5th Cir. 2006) (finding it was not an abuse of discretion to

exclude testimony without an in limine hearing only because witness admitted he was not

qualified).   To rule otherwise would severely prejudice the proponent of the evidence without

providing an opportunity to have that evidence properly assessed.

> 2.      **The Magistrate Judge properly assessed Defendants' experts under
> the governing standard and appropriately considered their testimony.**

Magistrate Judge Kaplan recognized that "Defendants counter with reports from experts

who inspected the same properties and found them to be generally accessible and usable by

handicapped persons."  (Dkt. #243 at 8).  Plaintiff asserts that the four experts should not have

been considered because they offer subjective opinions rather than opinions based on an

objective standard.  This assertion is incorrect and was properly rejected by the Magistrate Judge.

The Magistrate Judge correctly recognized that two of Defendants' experts conducted

their property inspections using what Plaintiff considers a "recognized, comparable, objective

measure of accessibility" -- primarily the HUD-approved safe harbors.   (Dkt. #243 at 9).   In

---

[7] Plaintiff cites to the Nielson decision as justifying a more detailed assessment.  In that case, however, the defendant
explicitly challenged the qualifications of plaintiff's expert in his motion for summary judgment and presented those
issues.  Plaintiff did not do so to the same extent here.

response to Plaintiff's allegations, Mark Wales and Pete Skarzenski explained point-by-point and feature-by-feature, how the contested conditions comply with the safe harbors and other standards, explained that the properties were accessible and usable when the safe harbors are properly applied (as opposed to the misapplication of Plaintiff's experts), and challenged the accuracy of Plaintiff's conclusions where appropriate. (Dkt. #237-31, App. 552-55; Dkt. #237-68, App. 1200-03; Dkt. #237-3, App. 2-85.1).

In addition, the Magistrate Judge recognized that two other experts proffered by Defendants refute Plaintiff's claim with "other creative means" to show accessibility, as was contemplated by Congress. (Dkt. #243 at 9). Although Plaintiff's attempts to characterize the methodologies employed by Paul Sheriff and Alison Vredenburgh as subjective and inherently unreliable, Plaintiff ignores the reports and testimony of these experts which make clear that their methodology was objective, reliable, and admissible under the Federal Rules of Evidence.[8]

Plaintiff claims that Mr. Sheriff's "conclusions about the accessibility of properties are derived from his personal ability to navigate the properties." (Dkt. #245 at 16). Mr. Sheriff repeatedly made clear that his own abilities have nothing to do with his conclusions and that his findings and conclusions are based on whether the fundamental elements of accessibility, usability, and adaptability are present. (Dkt. #237-34, App. 606-607). Mr. Sheriff evaluates the various components of the living space, including door width, routes into and through the dwelling (width of hallways etc.), usability of environmental controls (location and height), the presence of 30 x 48 clear floor space, and accessibility of common areas. (Dkt. #237-34, App. 595-618; Dkt. 237-35, App. 619-23; see also Dkt. #237 at 41-42).

Plaintiff similarly mischaracterizes Dr. Vredenburgh's methodology. (Dkt. #245 at 17-18). Contrary to Plaintiff's allegations, Dr. Vredenburgh does substantially more than evaluate

---

[8] Defendants responded to Plaintiff's argument concerning use of "objective" standards, explaining that the opinions were based on a wide array of technical guidance (including proper application of the safe harbors), peer reviewed research, professional judgment, and other repeatable, objective methodology. (Dkt. #242 at 10-11).

18

the accessibility of properties by photographing her non-disabled associate using a wheelchair throughout the properties. Dr. Alison Vredenburgh is an expert on ergonomics and has conducted and authored studies that evaluate the accessibility and usability of walkways and ramps and of apartment bathrooms, kitchens, turning space, and control placement. (Dkt. #237-32, App. 557-73). Using her empirical research and studies as a guide, Dr. Vredenburgh assesses how properties meet the needs of persons with disabilities. Based on her comprehensive inspections of the properties, Dr. Vredenburgh determined that the properties are accessible, usable and adaptable to the needs of persons with disabilities. (See id.).

Contrary to Plaintiff's assertions and the cases on which Plaintiff relies, Mr. Sheriff and Dr. Vredenburgh are far from individual residents who happen to live at the properties and want to testify that their units are accessible. A review of their declarations and resumes makes clear that these experts have specialized knowledge and training and will meet the rigors of scrutiny if challenged in due course by Plaintiff. (Dkt. #237-33, App. 592-94; Dkt. #232, App. 590-91; Dkt. #237-34, App. 597; Dkt. #237-35, App. 620). There is no basis for excluding such expert testimony at this stage.

### 3. The testimony of Defendants' experts is not general or conclusory.

Plaintiff next bases its objection on the false assertion that Defendants' expert testimony failed to present specific facts. (Dkt. #245 at 15-16). As its support for this objection, Plaintiff cites not to the evidence submitted by Defendants but to the Magistrate Judge's synopsis and reference to the experts' overall conclusions. (Id.). Plaintiff's objection in this regard is nonsensical and borders on the frivolous. The record pending before the Magistrate Judge and submitted in opposition to Plaintiff's summary judgment includes very detailed, specific facts directly refuting the assertions of inaccessibility at the properties. As Plaintiff is well aware, the parties spent many months in expert discovery. Defendants filed affirmative and rebuttal reports

from each of its accessibility experts on the experts' overall theories and testimony and submitted property specific reports following Plaintiff's reports.[9]   On summary judgment, Defendants' experts submitted declarations swearing to, and incorporating by reference, each of their reports into the summary judgment record.   (Dkt. #237-31, App. 552-55; Dkt. #237-33, App. 592-94; Dkt. #237-35, App. 619-23; Dkt. #237-68, App. 1200-1203).   In addition, Defendants submitted a point-by-point summary exhibit chart pursuant to F.R.E. 1006, setting forth the specific expert opinions that refute each point on which Plaintiff moved.   (See Dkt. #237-3, App. 2-85.1). There can be no doubt that Defendants' experts offered specific rebuttals to Plaintiff's allegations.

### 4.    There are no "undisputed" conditions.

Plaintiff incorrectly asserts that Defendants fail to offer contradictory testimony on certain conditions and makes the bizarre statement that Defendants admit that the properties are not completely compliant.   (Dkt. #245 at 19-21).   Defendants refuted each and every alleged fact on an item-by-item basis.   (Dkt. #236 at 30-46; Dkt. #237-3, App. 2-85.1; Dkt. #242 at 28-30).

Plaintiff's attempt to liken this case to that presented in United States v. Shanrie (where "there is no question that [the property] was designed and constructed in a way that totally excludes people with mobility impairments in violation of the FHA") falls flat.   (Dkt. #245 at 20 (citing Shanrie, 699 F.Supp.2d 932, 938 (S.D. Ill. 2009)).   There is no support for finding that these properties "totally exclude[]" persons with disabilities, and such a comparison is without merit.   Plaintiff's assertion of any judicial admission from the Defendants is based solely on Plaintiff's willful blindness to recognize the contrary evidence and arguments.   The summary chart submitted in support of Defendant's Opposition itself makes clear that Defendants addressed all 500 "conditions" alleged by Plaintiff to be inaccessible. (Dkt. #237-3, App. 2-85.1).

---

[9] As explained in their Cross-Motion for Summary Judgment, Defendants' Appendix does not include the property-specific reports for all properties, as they have been incorporated into the record through the declarations of Defendants' experts and filed with the Court through its electronic filing system.

The majority of the "conditions" at issue in Plaintiff's Motion (issues #1-445) pertain to the requirement to make the public and common areas readily accessible to and usable by handicapped persons with the primary focus on "accessible routes." (Dkt. #236 at 30-36).[10] These allegations are responded by Defendant's experts in detail, issue-by-issue, in various manners: (1) There is no requirement under the safe harbors to have a network of sidewalks connecting every dwelling unit to the common use areas; (2) Plaintiff's examples of "undisputed" conditions focuses almost exclusively on sidewalks that were by definition not meant to be the "accessible" route; (3) Sidewalks, landings and ramps with greater than 5% running slope and 2% cross slope are accessible; (4) Clearly sidewalks with stairs were not intended to be the accessible route. Defendants' experts looked for alternative routes that met the necessary criteria; (5) Merely taking a measurement of a single point on a sidewalk is a faulty means of measuring the actual slopes of the sidewalk; (6) There were changes to the accessible routes caused by environmental conditions causing slope deviations, vertical level changes, cracks and gapping;[11] (7) The impact of the terrain and unusual characteristics at the various sites and the fact that not every sidewalk or entrance can meet Plaintiff's stringent standards; (8) The use of vehicular routes and vehicles is an acceptable means of accessing common use areas where the slope of sidewalks exceeds 8.33%. (Dkt. #237 at 42-48).

Although Plaintiff chose to look at the properties from the perspective that every feature must be covered by the FHA, Defendants' experts disputed other of Plaintiff's claims by explaining that some features are not covered at all. For example, Defendants' experts explained that (1) particular doors cited by Plaintiff as violations were in fact not "designed for passage" (2) at times, the existing terrain made it impractical to provide an accessible route to certain

---

[10] As explained in Defendants' Reply, if one of Defendants' experts concluded that a particular measurement is accessible at one property, obviously that opinion would carry over to another property where the same measurement exists. (Dkt. #242 at 26, n.22).
[11] Plaintiff's inspectors ignore that soil expands and contracts, eventually causing obvious sidewalk movement (e.g., the high clay content of the soil in Dallas).

units, (3) certain units located on a second "ground floor" were not intended to be "covered units" due to site constraints, and (4) many "violations" cited by Plaintiff actually are elements that were designed and constructed properly but have outlived their natural life or have fallen into disrepair thereby requiring maintenance.  (Id.; Dkt. #242 at 27-32).

In addition, Defendants' experts also explained that the presence of features of adaptive design were not considered by Plaintiff's experts.[12]  "Adaptive design" or "adaptability" refers to dwelling units that "can be adjusted or adapted without renovation or structural change." Baltimore Neighbor., Inc. v. Rommel Builders, Inc., 40 F.Supp.2d 700, 708 (D. Md. 1999); Phillips v. Downtown Afford., LLC, No. 06-00402, 2007 WL 2668637, at *8 (D. Haw. Sept. 5, 2007).  Whether or not a unit incorporates features of adaptive design is a necessary question of fact for determining FHA compliance.  Phillips, 2007 WL 2668637 at *1.  Hence, the presence of adaptable features is relevant to allegations concerning the accessible route into and through the unit, heights of light switches and thermostats, and usable kitchens and bathrooms (conditions 468-530).  (See Dkt. #236-2, App. 110-125).

Furthermore, Defendants' experts refuted Plaintiff's claims by explaining that certain alleged divergences from the suggested measurements of the safe harbors were minor, allowable construction tolerances.  See ANSI 117.1 § 3.2; (Dkt. #237-61, App. 949; Dkt. #237-11, App. 218); see, e.g. Access Now, Inc. v. Ambul. Surgery Ctr. Grp, Ltd., No. 99-109, 2001 WL 617529, at *11 (S.D. Fla. May 2, 2001); Parr v. Kapahulu Inv., Inc., No. 98-00329, 2000 WL 687646, *20 (D. Haw. May 16, 2000).  It is Plaintiff's burden to show that any variance exceeds the tolerance, and summary judgment is not appropriate where the movant does not respond to

---

[12] The four features of adaptive design are set forth at 42 U.S.C. § 3604(f)(3)(C)(iii).  It is well recognized in the building industry that the four features of adaptive design are key to complying with the goals of the FHA as they allow units to be changed to meet the specific needs of the disabled resident. (See Dkt. #237-29, App. 553-555; Dkt. #237-31, App. 593-594; Dkt. #237-35, App. 620-623; Dkt. #237-68, App. 1201-1203; Dkt. #237-34, App. 602-603).

disputes related to tolerances or maintenance.  <u>Cherry v. City Coll. of San Francisco</u>, No. 04-04981, 2006 WL 6602454 at *6, *10 (N.D. Cal. Jan. 12, 2006).

Although Plaintiff chooses to overlook direct responses that do not fit within its theory of this case, the plain and clear reality is that Defendants addressed each of Plaintiff's asserted violations with specific facts and that the Magistrate Judge properly denied Plaintiff's Motion.

## V.    The Magistrate Judge Gave Proper Consideration To Plaintiff's Assertion Of The Denial Of Rights To A Group Of Persons.

Plaintiff's fourth objection is that the Court failed to address its second basis for liability. Although Plaintiff argues that it "clearly stated two bases for finding liability for FHA and ADA violations," Plaintiffs' Motion was predicated on the theory that Defendants have been engaged in a pattern and practice of discrimination, and the Magistrate Judge did not err in focusing its decision on the arguments as presented by Plaintiff.  (Dkt. #243 at 9, n.5).

Moreover, this objection misstates what is required to show a violation of the FHA.  The United States may *commence* a civil action under two circumstances:  (1) where a person or group of persons is engaged in a pattern or practice of discrimination or (2) where a group of persons have been denied rights granted by the FHA and such denial raises an issue of general public importance.  42 U.S.C. § 3614(a).  This case is now well beyond a motion to dismiss stage, and no one is challenging Plaintiff's ability to commence this suit.

The question at hand is whether Plaintiff is entitled to judgment against Defendants -- a question that has as its primary focus whether the properties at issue were designed and constructed to be reasonably accessible to most persons with disabilities.  <u>See</u> <u>Taigen</u>, 303 F. Supp. 2d at 1151; <u>Fair Hous. Council</u>, 210 Fed. Appx. at 482.  Plaintiff is not entitled to judgment on claims based upon the accessibility of the properties simply because the attorney general has decided that an alleged denial of rights to a group of persons raises an issue of general public importance sufficient to file suit.

The cases cited by Plaintiff do not support their theory.  In each of the cases cited, the
court entered summary judgment because the defendants conceded liability for FHA violations.
See Shanrie Co., 699 F.Supp. at 938 ("There is no question … [the property] totally excludes
people with mobility impairments..."); Hallmark Homes, 2003 WL 23219807, at *8 (defendants
conceded that the property does not comply with the Act and admitted to many of the violations);
Taigen, 303 F.Supp. 2d at 21 (defendants conceded violations); Pac. Nw., 2003 WL 24573548,
*14 (defendants did not dispute the existence of violations making property inaccessible).

In contrast, here, there are genuine issues of material fact concerning whether the
dwelling units and common areas of the properties, were designed and constructed, to be
reasonably accessible to and usable by most persons with disabilities.  Each alleged violation
identified by Plaintiff is disputed by Defendants and its experts, and Defendants have not
admitted that the properties are not completely compliant with the law.[13]

## VI.  The Magistrate Judge Properly Determined There Were Questions Of Fact With Regard To The Alleged ADA Violations.

Plaintiff's fifth and final objection is that the Magistrate Judge failed to recognize that the
question of accessibility under the Americans with Disabilities Act ("ADA") is a question of law.
Like the other five objections, Plaintiff's objection is without merit.  (See Dkt. #237 at 22; Dkt.
#237-3, App. 2-85.1).   The Magistrate Judge properly recognized that there was contrary
evidence that must be presented to the jury.

Plaintiff's claims under the ADA relate exclusively to the few issues in public areas (e.g.,
the leasing center and its parking).   The Magistrate Judge reasonably concluded that:  "As with
plaintiff's FHA claim, these competing expert reports raise genuine issues of material fact

---

[13] The only evidence Plaintiff offers of such concessions is that Paul Sheriff said that the properties he surveyed
have "a few punch-list type of construction items that negatively impacted accessibility." (See Dkt. #245 at 21).
However, these items did not change Mr. Sheriff's conclusion that the properties are accessible, usable and
adaptable.  Any "punch-list type" items noted were de minimis, did not make the properties inaccessible to persons
with disabilities, and do not necessarily bear any relationship to the 500 issues raised in Plaintiff's Motion.

concerning violations of the ADA standards."  (Dkt. #243 at 12).  Plaintiff asserts that its

"experts properly interpreted the ADA Standards in determining that a particular observed

condition violated the ADA."  (Dkt. #245 at 22).  However, it was clear from Defendants'

rebuttal that there were significant factual issues in dispute here as well (e.g., measurement of

slope, size of parking spaces etc.).  Defendants' experts contested all allegations of ADA

violations in both the main reports and property-specific appendices, (Dkt. #237 at 22; Dkt.

#237-3, App. 2-85.1), and Plaintiff failed to address evidence that the alleged barriers are within

permitted dimensional tolerances or otherwise not required.  Access Now, Inc., No. 99-109, 2001

WL 617529, at *11; (Dkt. #237 at 37-38, 43; Dkt. #242 at 25).

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court overrule Plaintiff's

Objections, enter the Magistrate Judge's Findings and Recommendation, and expeditiously

schedule this matter for trial.

Respectfully submitted,

SESSIONS LAW FIRM P.C.                    HOLLAND & KNIGHT LLP

By:                                       By:

/s/ William Lewis Sessions                /s/ Christopher B. Hanback
William Lewis Sessions                    Christopher B. Hanback (*Admitted Pro Hac Vice*)
Texas Bar No. 18041500                    D.C. Bar No. 232579

Republic Center - Suite 4400              /s/ Lynn E. Calkins
325 North St. Paul Street                 Lynn E. Calkins (*Admitted Pro Hac Vice*)
Dallas, Texas 75201                       D.C. Bar No. 445854
Telephone: (214) 217-8855
Facsimile: (214) 217-8856                 /s/ Rafe Petersen
Email: lsessions@sessionslaw.net          Rafe Petersen (*Admitted Pro Hac Vice*)
                                          D.C. Bar No. 465542

                                          2099 Pennsylvania Avenue, N.W., Suite 100
                                          Washington, D.C. 20006
                                          Telephone: (202) 955-3000
                                          Facsimile: (202) 955-5564
                                          Email: christopher.hanback@hklaw.com
                                          Email: lynn.calkins@hklaw.com
                                          Email: rafe.petersen@hklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of December, 2011, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this notice as service of this document by electronic means:

Kevin J. Kijewski
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
kevin.kijewski@usdoj.gov

Jennifer E. McAllister
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
jennifer.mcallister@usdoj.gov

Pamela O. Barron
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
pamela.barron@usdoj.gov

Neta Borshansky
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
neta.borshansky@usdoj.gov

Andrea K. Steinacker
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
andrea.steinacker@usdoj.gov

James T. Jacks
U.S. Attorney's Office
1100 Commerce Street, 3d Fl.
Dallas, TX 75242
jim.jacks@usdoj.gov

John R. Parker
U.S. Attorney's Office
1100 Commerce Street, 3d Fl.
Dallas, TX 75242
john.parker@usdoj.gov

Susan L.S. Ernst
U.S. Attorney's Office
1100 Commerce Street, 3d Fl.
Dallas, TX 75242
susan.ernst@usdoj.gov

/s/ Christopher B. Hanback
*Counsel for Defendants*